929 A.2d 157

Richard David HURST

v.

STATE of Maryland.

No. 124, Sept. Term, 2006.

Court of Appeals of Maryland.

July 31, 2007.

398

400

Claudia A. Cortese, Asst. Public Defender (Nancy S. Forster, Public Defender, Stacy W. McCormack, Asst. Public Defender, on brief), for petitioner.

Cathleen C. Brockmeyer, Asst. Atty. Gen. (Douglas F. Gansler, Atty. Gen., on brief), for respondent.

Argued before BELL, C.J., RAKER *CATHELL,
HARRELL, BATTAGLIA, GREENE and WILNER, ALAN
M. (Retired, specially assigned), JJ.

RAKER, J.

The issue presented in this case is whether the Circuit
Court for Frederick County erred in admitting testimony that
a rape victim, unconnected to the case before the court, did
not consent to sexual intercourse with petitioner for the
purpose of rebutting petitioner's contention that the current
complainant consented to sexual intercourse. We shall hold
that the Circuit Court erred and that the testimony should not
have been admitted.

## I.

Petitioner, Richard David Hurst, was convicted by a jury in
the Circuit Court for Frederick County of first and second
degree rape, first and second degree sexual offense, kidnap-
ing, and false imprisonment. The Circuit Court sentenced
him to life imprisonment without the possibility of parole for
first degree rape, a concurrent life sentence for first degree
sexual offense, and thirty-years' imprisonment for kidnaping.[1]

Petitioner's convictions stemmed from events occurring on
May 16, 2002. That evening, petitioner encountered Gertrude
P., a mentally disabled thirty-seven-year-old woman, as she
was walking on Wessel Boulevard in Hagerstown, Maryland.
Ms. P. had been searching for jobs at local stores throughout
the day and was returning to her home. Petitioner drove by
Ms. P. in his pick-up truck and stopped to ask for directions to
Frederick, Maryland. Ms. P. responded by telling petitioner
that "she was not very good at giving directions" and that he

---

* Cathell, J., now retired, participated in the hearing and conference of
this case while an active member of this Court; after being recalled
pursuant to the Constitution, Article IV, Section 3A, he also participated
in the decision and adoption of this opinion.

1. The court merged the remaining convictions for sentencing purposes.

should go to a nearby gas station. Petitioner then drove away.

Petitioner returned along the same road shortly thereafter and again asked Ms. P. for directions to Frederick. During this second encounter, Ms. P. tried to give petitioner directions. Petitioner suggested that she get into his truck to explain the route; Ms. P. agreed and entered the vehicle. Once in the truck, Ms. P. directed petitioner to an exit off the highway that would enable him to reach Frederick. When Ms. P. and petitioner reached the exit, petitioner passed the exit without turning off the road. Petitioner stopped eventually at a field in Frederick County.

Ms. P. and petitioner offered different versions of the events that followed. Ms. P. testified at trial that after stopping the truck, petitioner told her to get out of the truck. She stated that petitioner told her he had a knife but would not hurt her unless she resisted his commands. Ms. P. said that petitioner then dragged her down a hill and told her to get on the ground and pull down her pants and underwear. She testified that petitioner forced her to perform fellatio and to engage in vaginal intercourse. Ms. P. stated that at one point, petitioner held his hand over her mouth so that she would not scream.

Petitioner contended that he had picked up Ms. P. under the impression that she was a prostitute. He testified that after driving together and talking with Ms. P., he stopped in the Frederick County field to urinate. Petitioner stated that after urinating, he returned to the truck and offered Ms. P. twenty dollars to "fool around a little bit." He testified that Ms. P. consented to oral and vaginal sex and that it was only when he started to ejaculate that Ms. P. "freaked out" and began "to push and tug." Petitioner conceded that he placed his hand over Ms. P.'s mouth "for a couple of seconds" because he "was afraid ... she was turning it into something [it] wasn't." Petitioner testified that when Ms. P. "freaked out" and asked him to stop, he did so immediately.

Following the events in the field, petitioner drove Ms. P. to a Hagerstown area convenience store. After they reached the

store, petitioner gave Ms. P. twenty dollars. She left the truck and entered the convenience store, at which time a cashier noticed her crying. After asking her why she was crying, the cashier called the police. Ms. P. told the responding police officers that she had been raped.

At trial, the State contended that petitioner forced Ms. P. to engage in sexual conduct on the evening of May 16, 2002. The State offered Ms. P.'s testimony and the testimony of the convenience store clerk, various police officers, and a registered nurse who had examined Ms. P. early in the morning on May 17, 2002. Petitioner testified that the sexual acts were consensual.

As rebuttal to petitioner's testimony, the State offered the testimony of Jacqueline E., a woman who had been raped by petitioner twenty-one years earlier. The defense objected to Ms. E.'s testimony, arguing that it was inadmissible under Maryland Rule 5–404(b)'s prohibition of the use of prior bad acts or crimes to prove criminal propensity.

The court held a hearing outside the presence of the jury. The State contended that because petitioner had been convicted of raping Ms. E. on the evening of February 2, 1981, and petitioner had argued in that earlier case that Ms. E. consented to sexual intercourse on that date, her testimony was admissible to rebut petitioner's claim that Ms. P. consented to sexual relations on the evening of May 16, 2002. The State argued that the testimony was admissible also as proof of *modus operandi* or signature evidence.

The trial court admitted Ms. E.'s testimony on the grounds that the testimony was admissible "[b]oth as to the gaining or offsetting the consent defense and the similarities proffer." Ms. E. testified before the jury as follows:

"[STATE'S ATTORNEY]: Okay. When you were at the area of your car did there come a time that you were approached by a person who is later identified as Richard David Hurst?

[MS. E.]: Yes.

\*　　\*　　\*

[STATE'S ATTORNEY]: And when the defendant approached you as you stood next to your car what did he say to you?

[MS. E.]: He said that he needed directions, um, he was, he needed to, um, he needed directions to go visit a friend, I think around Washington Street, Washington and University Avenue.

\*　　\*　　\*

He would say well I think this street intersects this University does it? And I said I didn't know. Uh, he said he need, he just really wanted to get over to see his friend, um, he know it was really close by. Um—

[STATE'S ATTORNEY]: Did there come a time that he moved closer to you and made a statement to you?

[MS. E.]: Yes he forced his way to the car. He, um, told me that he had a knife, um, not—

[STATE'S ATTORNEY]: Did you ever see the knife?

[MS. E.]: No, didn't want to.

[STATE'S ATTORNEY]: Did he ever show the knife to you?

[MS. E.]: No.

[STATE'S ATTORNEY]: Did he ever indicate where the knife was?

[MS. E.]: In his pocket.

\*　　\*　　\*

[STATE'S ATTORNEY]: And after he told you to get in the car what did he do?

[MS. E.]: He forced his way into the car. He told me to, um, roll up all my windows, um, to lock the doors, and that all he wanted was a lift to his friend's apartment.

\*　　\*　　\*

[STATE'S ATTORNEY]: All right. And after you drove for some time did there come a time that he told you something else?

[MS. E.]: Well we drove around for several hours, um, and then he had me stop the car.

\* \* \*

[STATE'S ATTORNEY]: And did he force you to perform oral sex on him?

[MS. E.]: Yes.

[STATE'S ATTORNEY]: And after he forced you to perform oral sex did he perform another sex act on you?

[MS. E.]: Yes he got on top of me he, um, reclined the passenger seat down, um, had me on the passenger seat and climbed on top of me.

[STATE'S ATTORNEY]: And what, what act did he perform?

[MS. E.]: Um, intercourse.

[STATE'S ATTORNEY]: Did you consent to these acts, ma'am?

[MS. E.]: No.

[STATE'S ATTORNEY]: And after these acts were completed what happened?

[MS. E.]: He told me that, um, I could pull my clothes back on and I could, and to get on the driver's side, and, uh, I would just, to just drive him, uh, home, drive him where (inaudible).

[STATE'S ATTORNEY]: All right. And did you drive him and let him off?

[MS. E.]: Yes.

[STATE'S ATTORNEY]: And you left the area?

[MS. E.]: Yes."

Petitioner noted a timely appeal to the Court of Special Appeals. The intermediate appellate court held that Ms. E.'s testimony was admissible because the events she described were sufficiently similar to the present charges to be admissi-

ble as an exception to the general rule prohibiting the admission of prior bad acts or crimes evidence. *Hurst v. State,* 171 Md.App. 223, 247–48, 909 A.2d 1069, 1083 (2006). The Court of Special Appeals reasoned that a prior offense need not qualify as a signature crime to be admissible, stating as follows:

"The just-cited cases undermine appellant's assertion that to be admissible the prior offenses must be a 'signature crime,' nor does appellant persuade us that such a requirement should be imposed in a case like this where the prior actions by the defendant against Ms. E. were quite similar, albeit not precisely identical, to those committed upon Ms. P. In both instances, appellant approached women seeking directions. In each case, the victims were transported by automobile, and the car doors were locked during the transport by appellant. Further, according to the victims, appellant told both women that he had a knife. He also told both women that everything was going to be okay if they cooperated. Appellant traveled with both women for a long time, eventually coming to secluded areas where he first forced them to perform oral sex and then engaged in nonconsensual vaginal intercourse with them. Following these acts, he allowed the women to dress and go free."

*Id.*

Petitioner filed a petition for a writ of certiorari before this Court, which we granted to address the following question:

"Did the trial court err in admitting other crimes evidence, specifically old other crimes evidence, here over 21 years old, and which did not qualify as signature crime?"

*Hurst v. State,* 396 Md. 524, 914 A.2d 768 (2007).

## II.

■■■ Subject to several exceptions, evidence of other crimes or bad acts is not admissible in Maryland. *See Borchardt v. State,* 367 Md. 91, 133, 786 A.2d 631, 656 (2001); *Ayers v. State,* 335 Md. 602, 630, 645 A.2d 22, 35–36 (1994); *State v. Faulkner,* 314 Md. 630, 633, 552 A.2d 896, 897 (1989).

Propensity evidence, or evidence suggesting that because the defendant is a person of criminal character it is more probable that he committed the crime for which he is on trial, is not admissible into evidence. *Streater v. State,* 352 Md. 800, 806, 724 A.2d 111, 114 (1999). We reiterated in *State v. Taylor,* 347 Md. 363, 701 A.2d 389 (1997), that " 'there are few principles of American criminal jurisprudence more universally accepted than the rule that evidence which tends to show that the accused committed another crime independent of that for which he is on trial, even one of the same type, is inadmissible.' " *Id.* at 369, 701 A.2d at 392 (quoting *Cross v. State,* 282 Md. 468, 473, 386 A.2d 757, 761 (1978)).

■ Maryland Rule 5–404 embraces these principles. The Rule states, in pertinent part, as follows:

"Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, common scheme or plan, knowledge, identity, or absence of mistake or accident."

Rule 5–404(b). The primary concern underlying the Rule is a "fear that jurors will conclude from evidence of other bad acts that the defendant is a 'bad person' and should therefore be convicted, or deserves punishment for other bad conduct and so may be convicted even though the evidence is lacking." *Harris v. State,* 324 Md. 490, 496, 597 A.2d 956, 960 (1991). *See also Merzbacher v. State,* 346 Md. 391, 406, 697 A.2d 432, 440 (1997) (stating that the rationale underlying Rule 5–404 is "to prevent a jury from punishing a defendant for having a 'criminal propensity' ").

■ Rule 5–404 recognizes several exceptions. Evidence of other crimes may be admitted if the evidence is substantially relevant to some contested issue in the case and is not offered to prove guilt based on propensity to commit crimes. *Harris,* 324 Md. at 496–97, 597 A.2d at 960. The Rule makes clear that evidence of a party's prior bad acts or crimes may be admissible if it possesses some "special relevance, i.e. is sub-

stantially relevant to some contested issue in the case and is not offered simply to prove criminal character." *Id.* at 500, 597 A.2d at 961.

■ Before evidence of prior bad acts or crimes may be admitted, the trial court must engage in a three-step analysis. *Faulkner,* 314 Md. at 634–35, 552 A.2d at 898. First, the court must decide whether the evidence falls within an exception to Rule 5–404(b). *Id.* at 634, 552 A.2d at 898. Second, the court must decide "whether the accused's involvement in the other crimes is established by clear and convincing evidence." *Id.* Finally, the court must balance the necessity for, and the probative value of, the other crimes evidence against any undue prejudice likely to result from its admission. *Id.* at 635, 552 A.2d at 898.

### III.

■ Petitioner contends that the trial court erred in admitting the testimony of Ms. E. because the evidence had no special relevance and merely demonstrated criminal propensity. Petitioner argues that admission of this type of evidence—*i.e.,* testimony involving lack of consent of a prior rape victim to prove another person's lack of consent—allows propensity evidence that is inadmissible under this Court's ruling in *Vogel v. State,* 315 Md. 458, 554 A.2d 1231 (1989). Petitioner contends also that the events underlying Ms. E.'s testimony were not so unusual or similar to those in the instant case to be admissible under the Rule 5–404(b) exception allowing signature crimes evidence, that the passage of time between the events greatly diminished the probative value of Ms. E.'s testimony, and that any minimal probative value derived from Ms. E.'s testimony was greatly outweighed by its prejudicial effect.

The State argues that Ms. E's testimony falls within an exception to Rule 5–404(b). The State's theory is that Ms. E.'s testimony that she did not consent to sexual relations with petitioner is relevant to rebut petitioner's defense that Ms. P. consented to sexual activity with him. The State reasons that

Ms. E's testimony was relevant to prove that, given petitioner's pattern of behavior in the rape of Ms. E, which was substantially similar to the pattern of behavior in this case, it was unlikely that Ms. P. consented to the sexual activity as petitioner had testified.

The State relies on our holding in *Merzbacher,* 346 Md. 391, 697 A.2d 432, to support its position that Ms. E.'s testimony was admissible to demonstrate a lack of consent on the part of Ms. P. That reliance is misplaced.

*Merzbacher* involved a series of sexual assaults committed by a teacher against one of his students. The defendant claimed those acts were consensual in nature, while the complainant denied that claim. Over defense objections, the Circuit Court admitted testimony from students other than the complainant who claimed that the defendant sexually assaulted them as well.

We held that testimony of the other students was admissible as an exception to Rule 5–404(b)'s prohibition on prior bad acts or crimes evidence. *Merzbacher,* 346 Md. at 411, 697 A.2d at 442. We noted that the defendant's use of "frivolity and fright" while running his classroom "served to explain and was particularly relevant to why Murphy, either reasonably or unreasonably, waited so long to reveal her story to the State's Attorney's Office." *Id.* at 409, 697 A.2d at 441. Next, after noting that lack of consent may be shown by either proof of resistance or proof that the victim did not resist the aggressor because of fear, we held that the other students' testimony was admissible because it supported a finding that the complainant did not resist the defendant's sexual advances because of fear. *Id.* at 411, 697 A.2d at 442. We stated as follows:

> "Trial testimony revealed that Merzbacher's persistent and vicious conduct created a threatening environment which suggested that Murphy had little choice but to acquiesce in his advances. Such testimony was highly relevant to the consent issue, and was not 'offered to prove the defendant's

guilt based on propensity to commit crime or his character as a criminal.'"

*Id.* The evidence in *Merzbacher* was admitted properly because the climate of fear created by the defendant explained both the contested issues of consent and the victim's delay in reporting the sexual abuse.

The State reasons that, similar to the *Merzbacher* circumstances, Ms. E's testimony was relevant to establish for the jury the threatening environment petitioner created when he forced Ms. P. to engage in sexual activity. Curiously, the State then seems to switch its argument from one of rebuttal of the defense of consent to *modus operandi,* arguing that the evidence "was admissible if the circumstances between the two episodes were sufficiently similar."

The *Merzbacher* rationale does not apply to the present case. Ms. P. reported the May 16, 2002, events immediately, and thus, Ms. E.'s testimony was not relevant to explain any delay in reporting sexual abuse. Further, Ms. P. had never met nor heard of petitioner before that evening and knew nothing of the events to which Ms. E. testified. Ms. E.'s testimony did not, and could not, demonstrate that Ms. P. feared the defendant. The *Merzbacher* justifications for admitting evidence of prior sexual assaults do not apply to the instant case.

The only contested issue in this case was whether Ms. P. consented to the sexual acts. The State was required to demonstrate a lack of consent on the part of Ms. P. as to the sexual activities that it alleged. Evidence that a third party did not consent to sexual intercourse with petitioner in the past has no bearing on whether Ms. P. consented to sexual activity. Ms. E.'s testimony was irrelevant as well to Ms. P.'s consent or lack of consent. It was in essence evidence that petitioner possessed a criminal propensity to engage in sex crimes and, as such, was inadmissible.

We hold that the Circuit Court abused its discretion in admitting the testimony of Ms. E. Evidence of prior sexual assaults shows propensity of criminal activity rather than

demonstrating a subsequent complainant's lack of consent; it is for this reason that such evidence is generally inadmissible. *See State v. Alsteen,* 108 Wis.2d 723, 324 N.W.2d 426, 429 (1982). *See also* GEORGE L. BLUM, *Admissibility, in Rape Case, of Evidence that Accused Raped or Attempted to Rape Person Other Than Prosecutrix—Prior Offenses, in* 86 A.L.R.5th 59, § 6(a), p. 184–85 (2001) (noting that with "regard to the question of admissibility of evidence that the accused raped or attempted to rape another woman for the purpose of demonstrating the complainant's lack of consent or the accused's use of force, the rule appears to be that ... such evidence is inadmissible where the only issue involved is whether the act of intercourse was voluntary").

Many of our sister courts that have not broadened their rules of evidence to permit propensity evidence in sexual offense cases agree with our rationale. For instance, in *Com. v. Minor,* 267 Va. 166, 591 S.E.2d 61 (2004), the Virginia Supreme Court considered the question of whether evidence showing that the defendant raped one or more individuals other than the victim in the crime charged was relevant to the question of whether that victim consented to sexual intercourse with the defendant. The court concluded that it was not, reasoning as follows:

> "In our view, evidence showing that a defendant raped one or more individuals other than the victim in the crime charged is generally not relevant to the question whether that victim did or did not consent to sexual intercourse with the defendant. This is so because '[t]he fact that one woman was raped ... has no tendency to prove that another woman did not consent.' *Lovely v. United States,* 169 F.2d 386, 390 (4th Cir.1948).[2]

---

**2.** The Virginia Supreme Court noted, in a footnote, that the decision in *Lovely v. United States,* 169 F.2d 386 (4th Cir.1948), predates Federal Rule 413. *Com. v. Minor,* 267 Va. 166, 591 S.E.2d 61, 68 n. 2 (2004). The court concluded, however, that because the evidence before it was not relevant, the new Federal Rule 413 would not change its conclusion. *Id.* (citing Federal Rule 413 for the proposition that evidence of a defendant's commission of similar sexual offenses is admissible and

As the court in *Lovely* explained, 'evidence of other similar offenses is held admissible for the purpose of establishing intent in cases of assault with the intent to commit rape . . ., and evidence of other offenses of like character is admissible in prosecutions for crime involving a depraved sexual instinct.' 169 F.2d at 390. However, the court observed that 'the overwhelming weight of authority is that such evidence is not admissible in prosecution for rape' for obvious reasons. *Id.* 'Other attempts to ravish have a tendency to show that an assault under investigation was made with like intent. Acts showing a perverted sexual instinct are circumstances which with other circumstances may have a tendency to connect an accused with a crime of that character.' *Id.* But, as already noted, the issue of consent concerns a victim's state of mind and is unique with regard to each individual victim."

*Minor*, 591 S.E.2d at 67–68 (some internal citations and footnotes omitted).

The Supreme Court of Louisiana addressed this issue cogently in *State v. McArthur*, 719 So.2d 1037 (La.1998). In that case, the defendant contended that the complainant had consented to sexual intercourse. The State introduced the testimony of two witnesses to rebut the defendant's consent defense. The State contended that because the defendant had attempted to rape these witnesses, their testimony was relevant to show that he intended to rape the complainant. *Id.* at 1040. The court rejected that contention, noting as follows:

"In *State v. Hatcher*, we addressed this very issue. 372 So.2d 1024, 1034 n. 1 (La.1979) on rehearing. There we stated:

Where the only issue in a prosecution for rape is that of consent, other offenses are usually held inadmissible. The lack of consent by other victims is not probative of lack of consent by the complainant of the charged offense.

---

"may be considered for its bearing on any matter to which it is relevant").

Consistent with that principle, in *State v. Ledet*, we held that evidence of a prior rape against a different victim was inadmissible in an aggravated rape trial with a consent defense to prove intent because specific intent is not an element of aggravated rape. 345 So.2d 474, 479 (La.1977) ('when there is no contest at all over the participation of the accused in the alleged incident, but the only question is whether any crime at all took place, evidence of extraneous offenses serves only to establish that defendant is capable of and thus likely to have committed the crime in question, and as such the evidence is inadmissible').

This case is distinguishable from *State v. Talbert*, 416 So.2d 97 (La.1982) in which we held that the defendant's prior rape of the *same* victim was admissible to prove the 'defendant's intent to have intercourse without the victim's consent.' To the contrary, in this case, a prior victim's lack of consent is irrelevant to the present victim's consent or lack of consent."

*McArthur*, 719 So.2d at 1041 (some internal citations and footnotes omitted). The court concluded that evidence of prior sex crimes is inadmissible when it is not independently relevant to prove a material issue. *Id.*

Similarly, in *Alsteen*, 108 Wis.2d 723, 324 N.W.2d 426, the Wisconsin Supreme Court held that evidence of prior sexual crimes is inadmissible to prove that a subsequent complainant did not consent to sexual relations. In that case, the trial court allowed one witness to testify that the defendant had sexually assaulted his eleven-year-old daughter, and a second witness to testify that the defendant had sexually assaulted her. The court held that the testimony was inadmissible and that its admission constituted reversible error, reasoning as follows:

"Because Alsteen admitted having sexual intercourse with [the complainant], the only issue was whether [the complainant] consented to the act. Evidence of Alsteen's prior acts has no probative value on the issue of [the complainant's] consent. Consent is unique to the individual. The fact that one woman was raped ... has no tendency to prove that

another woman did not consent. Thus the testimony of [the prior victims] was irrelevant and should have been excluded."

*Id.* at 429 (internal citations and quotations omitted). *See also State v. Sweeney*, 299 Mont. 111, 999 P.2d 296, 302 (2000) (finding that the evidence of a prior sexual assault was admitted improperly because it served only to prove defendant's character and to show that he acted in conformity with that character); *Brown v. State*, 459 N.E.2d 376, 379 (Ind.1984) (stating that where the only issue was consent of the current complainant, evidence of prior rapes committed by the defendant was not admissible because the fact that one woman was raped does not tend to prove that another woman did not consent to sexual activity).

As to its oblique reference to *modus operandi* as a basis for admitting the evidence, the State fares no better. The *modus operandi* exception is a subset of the identity exception under Rule 5–404(b). In *Faulkner*, we pointed out that "[i]n order to establish *modus operandi*, the other crimes must be 'so nearly identical in method as to earmark them as the handiwork of the accused. . . . The device [used to commit the crime] must be so *unusual and distinctive* as to be like a signature.'" *Faulkner*, 314 Md. at 638, 552 A.2d at 900 (quoting *McKnight v. State*, 280 Md. 604, 613, 375 A.2d 551, 556 (1977)) (emphasis in original). This type of "signature crime" evidence is useful in *identifying* a defendant who claims that he was not the person who committed the crime. *Faulkner*, 314 Md. at 638, 552 A.2d at 900.

Obviously, in this case, the identity exception is unavailable to the State. Identification was not a contested issue. The sole defense in the case was consent, not criminal agency. Signature crime evidence is useful in identifying a defendant who claims that he was not the person who committed the crime. *Modus operandi* does not support the admission of Ms. E.'s testimony because identification was never a contested issue in this case.

Even assuming *arguendo* that identity was an issue in the case, Ms. E's testimony would not fall within an exception as a "signature crime." The time lapse of twenty-one years between the two events is problematic. Further, the two incidents were not in the same location or in the same type of community. The earlier rape occurred in Baltimore City, and the instant event occurred in a rural area, Hagerstown, some seventy miles away. In the earlier case, petitioner forced himself into Ms. E's car, whereas in the instant case Ms. P. entered petitioner's truck voluntarily. The sexual conduct in the first case occurred in the car; in the instant case, the sexual conduct occurred in a field. The discussion about prostitution and monetary compensation for sexual acts allegedly occurred only in the instant case. The two events are not sufficiently similar to constitute signature crimes having the accused's mark or a peculiarly distinctive *modus operandi* so that they may be said to be the work of the same person.

As a final argument, the State urges that if Ms. E's rebuttal testimony was relevant only as evidence of the defendant's propensity to commit rape, this Court should extend its holding in *Vogel,* 315 Md. 458, 554 A.2d 1231, and allow evidence of a defendant's prior rapes and sexual assaults to show such a propensity beyond the limitations we expressed in *Vogel.* We decline to do so.

*Vogel* predates this Court's adoption of the Maryland Rules of Evidence and was predicated on the common law of Maryland.[3] The question presented was whether there "exists in Maryland a 'sexual propensity' exception to the [common law] rule excluding evidence of other crimes," and the answer we gave was "a qualified 'yes.' " *Id.* at 466, 554 A.2d at 1234. In *Vogel,* we addressed the admissibility into evidence of a defendant's past sex crimes. We observed that "[i]t is abundantly clear that this Court has recognized the exception to the rule excluding evidence of prior crimes when (1) the prosecution is for sexual crimes, (2) the prior illicit sexual acts are similar to

---

3. By Order dated December 15, 1993, this Court adopted Title 5, Evidence, effective July 1, 1994.

that for which the accused is on trial, and (3) *the same accused and victim are involved." Id.* at 465, 554 A.2d at 1234. (emphasis added). We emphasized that the exception our predecessors recognized is strictly limited to those situations in which the prior sexual acts are similar to the offense for which the defendant is on trial and *involve the same victim. Id.* at 466, 554 A.2d at 1234. *See also Acuna v. State,* 332 Md. 65, 75, 629 A.2d 1233, 1238 (1993) (noting that the evidence of prior offenses in *Vogel* was admissible to show that the accused had a passion or propensity for illicit sexual relations with the person concerned in the crime on trial).

The State asks us now to extend *Vogel,* in a manner consistent with Federal Rules of Evidence 413 and 414, to allow the testimony of any third person and not limit the exception to illicit conduct with the particular person concerned in the crime on trial. Federal Rules 413 and 414 were enacted by the United States Congress as part of the Violent Crime Control and Law Enforcement Act of 1994, 108 Stats. 1796, Pub.L. No. 103–322 (1994). Congress determined that the rules were necessary for "the protection of the public from rapists and child molesters," finding that in "child molestation cases, for example, a history of similar acts tends to be exceptionally probative because it shows an unusual disposition of the defendant ... that simply does not exist in ordinary people." 2 JACK B. WEINSTEIN & MARGARET A. BERGER, WEINSTEIN'S FEDERAL EVIDENCE § 414App.01(2)(d), p. 19–20 (2d ed.2007) (quoting 140 Cong. Rec. S12990 (daily ed. Sept. 20, 1994) (statement of Sen. Dole)).

Federal Rules 413 and 414 create an exception to Federal Rule 404(b)'s exclusion of "propensity evidence." *See U.S. v. Blue Bird,* 372 F.3d 989, 992 (8th Cir.2004). Federal Rule 413 permits evidence of past sexual assault offenses when a defendant is accused of another offense of sexual assault to the extent such evidence is relevant, stating, in pertinent part, as follows:

"In a criminal case in which the defendant is accused of an offense of sexual assault, evidence of the defendant's commission of another offense or offenses of sexual assault is

admissible, and may be considered for its bearing on any matter to which it is relevant."

Fed.R.Evid. 413(a). Federal Rule 414 provides that in a case in which the defendant is accused of child molestation, evidence of past offenses of child molestation is admissible to the extent those offenses are relevant. Subject to the balancing of probative value against undue prejudice, the Rules permit propensity evidence in sexual assault cases. *See Blue Bird,* 372 F.3d at 994.

■■■■ We interpret the Maryland Rules according to the principles of statutory construction. *Nina v. Movahed,* 369 Md. 187, 193, 798 A.2d 557, 561 (2002) (noting that the general tenets of statutory construction apply to the interpretation of the Maryland Rules). In accord with the rules of statutory construction, we look first to the plain language of the rule. *See MVA v. Shepard,* 399 Md. 241, 254, 923 A.2d 100, 107–08 (2007) (quoting *Mayor & Town Council of Oakland v. Mayor & Town Council of Mountain Lake Park,* 392 Md. 301, 316, 896 A.2d 1036, 1045 (2006)). When the language of the rule is unambiguous, we ordinarily look no further than that language. *Id.* Unambiguous language will be given its usual, ordinary meaning unless doing so creates an absurd result. *Id.*

The plain language of Md. Rule 5–404(b) does not permit the admissibility of propensity evidence. No analogue to Federal Rule 413 or 414 can be found in the Maryland Rules of Evidence. If the Maryland Rule is to be "expanded" in its scope, there is an established process to be followed. That is by action of this Court sitting in its legislative capacity, not by judicial fiat.

Furthermore, in 2004, the Maryland General Assembly considered and rejected bills to admit into evidence prior sex crimes evidence to show propensity in cases involving sexual misconduct with a minor. House Bill 404 and Senate Bill 718 were introduced in the 2004 Legislative Session, to allow "a court to admit evidence of a defendant's commission of a certain separate act of sexual misconduct involving a minor in

a prosecution for certain sexual offenses involving a minor. . . ." Both bills received unfavorable reports and died in committee.

Contrary to the United States Congress, the General Assembly and this Court have determined that prior sex crimes evidence should not be admitted solely to demonstrate propensity in a trial involving a different complainant. If the Maryland Rule regarding propensity evidence in sex cases should be changed, the change should come from the Legislature or by this Court, sitting in its legislative capacity, exercising its authority to enact Rules of Practice and Procedure and Rules of Evidence. *See e.g., Trump v. State*, 753 A.2d 963, 972 n. 43 (Del.2000) (awaiting study of Federal Rule 413 *et seq.* by the Permanent Advisory Committee on the Delaware Rules of Evidence to determine what changes, if any, should be included in revising the Delaware Rules, which, in general, have been patterned after the Federal Rules of Evidence).

## IV.

 This Court has long held that we will not reverse a lower court's judgment if the error was harmless. *Flores v. Bell,* 398 Md. 27, 33, 919 A.2d 716, 719 (2007). In Maryland, an error is harmless if "a reviewing court, upon its own independent review of the record, is able to declare a belief, beyond a reasonable doubt, that the error in no way influenced the verdict." *Dorsey v. State,* 276 Md. 638, 659, 350 A.2d 665, 678 (1976). In the case *sub judice*, Ms. E. testified that petitioner raped her on the date of February 2, 1981. Her testimony involved specific details of the event, including what acts were performed and the means by which petitioner coerced her actions. As we have noted, we do not admit prior crimes or bad acts into evidence primarily because of the "fear that jurors will conclude from evidence of other bad acts that the defendant is a 'bad person' and should therefore be convicted." *Harris,* 324 Md. at 496, 597 A.2d at 960. We cannot say, beyond a reasonable doubt, that the inadmissible evidence did not contribute to the verdict of guilty. The

Circuit Court's decision to admit the testimony of Ms. E. was not harmless.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO REVERSE JUDGMENTS OF CONVICTION, AND TO REMAND THE CASE TO THE CIRCUIT COURT FOR FREDERICK COUNTY FOR A NEW TRIAL. COSTS IN THIS COURT AND THE COURT OF SPECIAL APPEALS TO BE PAID BY FREDERICK COUNTY.*