74 A.3d 831

**Dajuan MARSHALL**

v.

**STATE of Maryland.**

**No. 2500, Sept. Term, 2011.**

Court of Special Appeals of Maryland.

Sept. 4, 2013.

534

Bradford C. Peabody (Paul B. DeWolfe, Public Defender, on the brief) Baltimore, MD, for appellant.

Daniel J. Jawor (Douglas F. Gansler, Atty. Gen., on the brief) Baltimore, MD, for appellee.

Panel: WRIGHT, KEHOE, and PAUL E. ALPERT (Retired, Specially Assigned), JJ.

WRIGHT, J.

This appeal arises from the conviction upon retrial of appellant, Dajuan Marshall, of conspiracy to murder and gang association resulting in death. Marshall was first tried by a jury in the Circuit Court for Baltimore City on July 30 and August 2, 3, 4, 5, 6, and 9, 2010, and convicted of first degree murder, conspiracy to murder, conspiracy to kidnap, and a handgun violation. Marshall filed a motion for a new trial, based on juror misconduct, which was granted on September 10, 2010. Marshall's retrial was held on October 18, 19, 20, 21, and 24, 2011. On December 20, 2011, Marshall was sentenced to life imprisonment for conspiracy to murder plus twenty years to be served consecutively for gang association resulting in death. Marshall then filed this timely appeal.

## Questions Presented

Marshall presents three questions for our review, which we quote *verbatim:*

1. Was it error to admit certain portions of the prior testimony of Appellant, from his first trial?

2. Was it an abuse of discretion to deny the motion *in limine?*

3. Should the trial court have granted the motion to dismiss the charge of gang participation resulting in death, because the statute is void for vagueness?

For the reasons that follow, we answer questions 1 and 2 in the negative and affirm the decision of the trial court. We find that Marshall failed to renew his motion to dismiss after the grant of a new trial and, therefore, we decline to address Marshall's third question as it was not preserved for our review.

## Facts and Procedural History

On June 9, 2008, Kenneth "Kash" Jones, the alleged leader, or original gangster ("OG") of the Bloods gang known as the Pasadena Denver Lanes ("PDL"), was kidnapped from the corner of Water Street and Custom House in downtown

Baltimore City. Jones was found murdered in the 4500 block of Bonner Road shortly after midnight on June 10, 2008.

Marshall was arrested and charged with Jones's murder and other related offenses. On August 9, 2010, a jury convicted Marshall of first degree murder, conspiracy to commit murder, conspiracy to kidnap, and a handgun violation. On September 10, 2010, Marshall moved for a new trial on the ground of juror misconduct, which was granted by the trial court. Following a retrial in October 2011, Marshall was acquitted of the first degree murder charge, but he was found guilty of conspiracy to commit murder and gang association resulting in death and was sentenced to life imprisonment plus twenty years.

During his first trial, Marshall testified that, in 2007, he had left the Bloods gang called Family Over Everything ("FOE") to form the Spider or "Spyda" [1] Gang as a community improvement group. At retrial, according to State's witness, Omar Woods, Marshall was the OG of the Spider Gang, a Blood gang and rival of the PDL. Woods testified that he joined the Spider Gang because he "thought it was a brotherhood to where as though we take care of each other and take care of the community and try to uplift the community." Woods testified that when he joined the Spider Gang, it was explained to him that "we was supposed to be bounty hunters. We were bounty hunters. We was supposed to be like police department to the city. Watch over other gangs. Make sure they're doing everything the right way like helping the community and being our brother's keeper and we're not doing a bunch of wrong."

However, when questioned further, Woods testified that the Spider Gang was "[n]ot at all" as described to him and was really "nothing but a bunch of mischief. Tearing the community down. A lot of robbing people, petty crimes." Woods testified that the Spider Gang supported itself "[t]hrough a

---

1. In his first trial, Marshall testified that "Spyda" was an acronym meaning "Self Power Youth Development Association."

bunch of crimes around the city. Robberies, selling drugs, however we can get money." Woods testified that the Spider Gang's goal was to be the "last gang alive" in order to "take over the city" and, therefore, the gang had many enemies.

Regarding Jones's murder, Woods testified that he knew Jones was the "leader" of the PDL and that "[Jones] was on the menu," or targeted to be "killed on sight." Woods testified that Marshall had likewise been "placed on the menu" by the PDL. According to Woods, the Spider Gang would benefit by killing Jones because "if you take away the head of the organization the rest of the organization would fold" and the Spider Gang would "be one of the last standing . . . . [t]hat was the whole thing we was trying to do."

Woods testified that he was asked to participate in Jones's murder by Marshall and he would ride around Baltimore City with Marshall looking for Jones. After Jones's murder, Woods testified that the gang members were gathered and Marshall stated that he and several others had taken care of Jones, although Marshall was not the trigger man. Woods testified that the gang members involved in Jones's murder were Marshall, "Nose Bleed," "Rick Flare," and "Nephew." Woods testified that he had identified Marshall to the police as the person who "initiated" Jones's murder.

Woods testified that he was ordered by the Spider Gang's other OG, known as "Gotti," to "rob some people so we can earn some money to send to [Marshall]." When Woods was arrested after attempting to rob a store, he gave police information about the Spider Gang and Jones's murder because he wanted "leverage to help get out of the gang." In his discussions with police, Woods recounted an incident involving a business called JT's Bar. According to Woods, he called a senior gang member, "Kuran," about meeting an individual at JT's Bar to "get a bunch of guns." After Kuran told Woods that they were going to rob the bar, Woods testified that Marshall "showed up there and he was telling me they was together." Woods testified that he "opened the side door so they could come in and rob the store and everybody

else in it." The robbery of JT's Bar occurred approximately one month after Jones's murder.

Additional facts will be included in the relevant sections below.

## Discussion

### I.

Marshall contends that the trial court erred in admitting prior testimony from his first trial related to the defense's nonproduction of corroborating witnesses. Marshall argues that the admission of the prior cross-examination impermissibly shifted the burden of proof to the defense. Marshall maintains that, because the corroborating witnesses were claimed by his previous defense counsel in advance of his prior trial, the trial court erred in "shackling the new defense attorney to his predecessor's flawed, trial strategy." Marshall does not argue that the prior testimony was inadmissible, only that it was an abuse of discretion to admit it.

The State responds that the trial court did not abuse its discretion in admitting Marshall's prior testimony. The State asserts that the prosecutor was permitted to comment on the lack of corroboration during Marshall's first trial because Marshall had elected to testify and raise the issue of whether Spyda was a civic organization rather than a criminal gang. The State argues that "whether or not Spyda was a charitable organization . . . was not a fact inconsistent with guilt that the State bore the burden of disproving" and, therefore, any comment on it could not shift the burden of proof. The State avers that Marshall's prior testimony was admissible under a hearsay exception and the "inter-trial shift in tack in describing Spyda" during the first trial was "relevant to [Marshall's] credibility on the gang-participation charge." According to the State, "the prior testimony was independently relevant to show [Marshall's] shift in tack."

At his retrial, Marshall's counsel objected to the State's introduction of an audio recording of Marshall's prior testimony regarding the nature and purpose of the Spider Gang and

the lack of corroborating witnesses as to that purpose. The trial court allowed Marshall's prior testimony to be played for the jury, with certain portions redacted. The admitted portion complained about on appeal is as follows:

[THE STATE]: Well, what about Ali Muhammad? [²] You said he's like a brother?

[MARSHALL]: Yes.

[THE STATE]: Can he back up your version of what the Spider Gang is all about?

[MARSHALL]: Can he back it up?

[THE STATE]: Uh-huh.

[MARSHALL]: As far as what I said it's about?

[THE STATE]: Uh-huh.

[MARSHALL]: Yes, he should be able to.

[THE STATE]: Okay.

[MARSHALL]: He should.

[THE STATE]: Is he going to be here to testify to that?

[MARSHALL]: No, he's not here. He's under arrest, I believe.

[THE STATE]: Okay; but you can bring people in, can't you, to testify for you?

[MARSHALL]: Yes.

[THE STATE]: Your defense attorney listed him as a witness, did he not?

[MARSHALL]: That was a mistake. I don't know why his name was placed on there.

[THE STATE]: Okay; but you didn't think that you—you want Ali Muhammad in here to come in here and to support what you're saying, is that the Spider Gang is this wonderful, civil group that just does all this great community work?

 "We will not disturb a trial court's evidentiary ruling unless 'the evidence is plainly inadmissible under a specific rule or principle of law or there is a clear showing of an abuse

---

**2.** Ali Muhammad is also known as "Gotti."

of discretion.' " *Mines v. State*, 208 Md.App. 280, 291–92, 56 A.3d 560 (2012), *cert. denied*, 430 Md. 346, 61 A.3d 19 (2013) (quoting *Decker v. State*, 408 Md. 631, 649, 971 A.2d 268 (2009) (citations omitted)). "An abuse of discretion occurs when a decision is 'well removed from any center mark imagined by the reviewing court and beyond the fringe of what that court deems minimally acceptable.' " *Id.* at 292, 56 A.3d 560 (quoting *Gray v. State*, 388 Md. 366, 383–84, 879 A.2d 1064 (2005) (citations omitted)).

 Commentary on the lack of corroborating witnesses is permissible when a defendant elects to testify. In *Mines, supra*, 208 Md.App. at 295, 56 A.3d 560 we addressed the same argument regarding shifting the burden of proof based on a prosecutor's cross-examination of a defendant on the defendant's failure to produce corroborating witnesses. We held that the defendant's Fifth Amendment rights were not impaired nor could the questioning "be construed as an improper shifting of the burden of proof." *Id.* As in *Mines*, in the case at bar during Marshall's first trial, "the prosecutor's questions were directed to appellant after he took the stand, and involved whether there was support for factual claims raised by appellant's testimony." *Id.* at 299. We were clear that "[i]n the circumstances, where appellant testified in his own defense and, in his own testimony identified potential exculpatory witnesses, but called none of them to the stand, questions as to their absence ... did not constitute improper burden shifting." *Id.* at 301–02, 56 A.3d 560.[3] The trial court

---

3. While our decision in *Mines* was reached after Marshall's trial, the case law cited by Marshall nonetheless does not support his argument. Marshall cites *Simms v. State*, 194 Md.App. 285, 307, 4 A.3d 72 (2010), *aff'd*, 420 Md. 705, 25 A.3d 144 (2011), in which we held that the circuit court "erred or abused its discretion by permitting the State to introduce into evidence appellant's pretrial alibi notice, when appellant neither testified nor presented a defense case." The *Simms* Court noted that the circumstances before it were different than those in which a defendant testifies and calls witnesses. Marshall argued as much in his brief, quoting the *Simms* Court's statement that "[w]here a defendant testifies to an alibi and calls no additional witnesses to support it, the prosecution, by commenting on the nonproduction of

correctly noted that, during the first trial, "when [Marshall's] making statements, he can be asked if the people in his social organization is [sic] going to back him up about being a social organization, which is what his line of questioning is." The questioning and testimony was clearly admissible in Marshall's first trial.

██ We have previously held that when testimony is admissible during an original trial, it is admissible during a retrial. *See Finke v. State*, 56 Md.App. 450, 496–97, 468 A.2d 353 (1983) (testimony that was inadmissible in the first trial because of procedural failure rather than substantively inadmissible was admissible in retrial when the trial court corrected procedural error); *see also Brown v. State*, 153 Md.App. 544, 553, 837 A.2d 956 (2003) (videotape testimony of appellant from his first trial admissible in his second trial even though appellant did not take the stand in his own defense during that trial). Having determined that the trial court did not abuse its discretion in permitting the cross-examination during the first trial, we likewise find no abuse of discretion in admitting it during Marshall's retrial.

## II.

Prior to the start of his retrial, Marshall moved *in limine* to exclude evidence related to other crimes offered to prove gang affiliation. Marshall's trial counsel argued:

> ... Mr. Marshall, is charged under the gang statute and I know that the State has provided case law, but I'm going to argue that the State intends to introduce evidence of gang affiliation, pictures, photos, documents, things of that nature to elicit that my client is a member of this organization as identified as a gang. They intend to try to establish through that information that my client is considered one of the leaders of this gang and certainly, given the nature of

corroborating alibi witnesses, is merely pointing out the weakness in defendant's case." *Id.* at 320–21, 4 A.3d 72 (quoting *People v. Shannon*, 88 Mich.App. 138, 276 N.W.2d 546, 549 (1979)).

just that term, gang, Bloods and I think it prejudices my client tremendously for the State to be able to introduce information, documentation that's not necessarily, uh directly of my client. They are of other people who are a part of this organization called a Spider Gang per say [sic] and so, I would argue that that information should not be allowed to be introduced. If the State has evidence directly establishing my client's involvement in this organization, then that's one thing, but to bring in information about other individuals who may or may not be testifying in this case may not even, I don't even know who these individuals are. They got photographs and other documentation trying to establish this is in fact a gang and that my client is necessarily a part of it.

The State responded in part:

Additionally, Your Honor, the gang statute essentially requires that I put on evidence to show gang membership. Uh, additionally you know, the gang statute requires that I um, that I prove that there are, you know, three or four members of an organization that they commit crimes to benefit their criminal gang. So it's necessary to bring that evidence in, in order to show and to meet the standards establish by the statute.

After the State made a detailed proffer of the evidence it intended to introduce, counsel for Marshall argued:

Judge, first of all, that crime that the State is suggesting, my client was never charged with. The State's suggestion is that he directed that JTs [sic] Bar robbery. He's never been charged with that. Never been charged under the gang statute saying that, hey, here's another place where he fits right into that category. Fits right into this crime that this is an organization that went out, engaged in a crime for the benefit or the direction of this young man. That's one.

The other thing is the State's suggestion that my client directed this. They're saying he both directed it and participated in it like he was present. He, he directed it by being present. They didn't say, like if, if the theory is whatever I

say, do, then go do it. I'm, I'm in charge. Go hunt down this man, but then, I'm, I'm there participating in this. So, they want to add both. He's either participating or he's there or we both figured on up, right when that's not the case. They want to have both ways and we, we'll throw them out there and the jury will decide if it's one or the other, either he was present or he directed it. If they're saying he was there giving out orders like you grab this man around the neck, you drag him to the car, you open the trunk, you go, you know me, you drive up this way. You get out and you—no way. None of that, but that suggests that this crime, this one crime where my client's not charged. There's no other information that suggests other than that this one State's witness who has become a State's witness, whose [sic] a former member of this organization for a benefit says, my client was present and he ordered it. Nobody else says that. Not no big, not that it's the officers who are present say they saw what appeared to be people standing across the street as if they were looking out while this crime was going on. Nothing. Nothing that puts him there. Nothing that says that he directed this. So, that's very prejudicial to this case to let this young man come in here and say, yes, weeks ago, months ago now that I'm arrested, right, I did a crime and coincidentally this young man directed me to do that crime, right. I've done other crimes, right and there's no suggestion that he ordered me to do them, but his crime here where he's not been charged, where there's no other indication that he was present, yeah, he directed me to do that. That's what they're asking this Court to accept or allow somebody to come in here on these facts, where we already go this gang situation going on. It's already going to be sensitive, but to now suggest that okay, this broad theory that if you in charge, and matter of fact, there are two people alleged to be in charge of this organization. One of the individuals who is alleged to be in charge or they have two heads of this Spider Gang, the other person who the State contends is also a leader of the Spider Gang is identified by the State's witness as being

present at the time of this incident. She put other people, other members of the organization present during this kidnaping and doesn't mention my client at all, at all. So, to suggest that he somehow directed this when there was another member, another leader who was present, alleged to be present at the time of this incident is very prejudicial and I don't think that should be allowed, judge.

The trial court held the motion *in limine sub curia,* stating that "I am inclined to allow the State to get into this area, but it's obviously going to be on a question by question basis and I'm first going to have to hear the witnesses or the presentation of proof to be sure that the clear and convincing evidence standard for the [Md. Rule] 5–404(b) standards are met. . . ."

Marshall avers that the trial court erred in denying his motion *in limine* to preclude the State from introducing evidence of other crimes to satisfy the "pattern of criminal gang activity" required under Md.Code (2002, 2007 Supp.), § 9–801(d) of the Criminal Law Article ("CL").[4] Marshall maintains that the evidence related to the robbery of JT's Bar was not relevant and, therefore, not admissible, because it occurred after the murder and kidnapping and Marshall was never charged with the robbery. Marshall argues that Md. Rule 5–404[5] makes evidence of "other crimes, wrongs, or acts" inadmissible to prove his character or his propensity to commit crime. According to Marshall, the trial court erred in admitting evidence related to the robbery of JT's Bar because its potential prejudice outweighed its probative value and the jury "may have found" him guilty "because of evidence of the propensity of [his] associates to commit crimes."

---

**4.** CL § 9–801(d) provides:

 *Pattern of criminal gang activity.*—"Pattern of criminal gang activity" means the commission of, attempted commission of, conspiracy to commit, or solicitation of two or more underlying crimes or acts by a juvenile that would be an underlying crime if committed by an adult, provided the crimes or acts were not part of the same incident.

**5.** In his brief, Marshall cites to Md. Rule 4–504, which we presume to be a typographical error. Md. Rule 4–504 addresses expungement of records.

The State argues that CL § 9–804(a),[6] "as defined by § 9–801(d), essentially converts [what] would have been 'other crimes' evidence under Rule 5–404(b), to evidence directly relevant to an element of the charged offense." The State asserts that Marshall incorrectly implies that kidnapping and murder charges could have served as sufficient "underlying crimes" under the statute because those crimes were "part of the same incident" and the statute requires proof of underlying crimes that "were not part of the same incident."

It is well-settled that "[s]ubject to several exceptions, evidence of other crimes or bad acts is not admissible in Maryland." *Hurst v. State,* 400 Md. 397, 406, 929 A.2d 157 (2007) (citations omitted). The principle is embodied in Md. Rule 5–404, which states in pertinent part:

(b) **Other Crimes, Wrongs, or Acts.** Evidence of other crimes, wrongs, or acts including delinquent acts as defined by Code, Courts Article, § 3–8A–01 is not admissible to prove the character of a person in order to show action in conformity therewith. Such evidence, however, may be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, common scheme or plan, knowledge, identity, or absence of mistake or accident.

■ However, "[e]vidence of other crimes may be admitted if the evidence is substantially relevant to some contested issue in the case and is not offered to prove guilt based on propensity to commit crimes." *Hurst,* 400 Md. at 407, 929 A.2d 157 (citing *Harris v. State,* 324 Md. 490, 496–97, 597 A.2d 956 (1991)). "The Rule makes clear that evidence of a party's prior bad acts or crimes may be admissible if it possesses some 'special relevance, i.e. is substantially relevant to some contested issue in the case and is not offered simply to prove

---

6. CL § 9–804(a) provides that a person may not:
(1) participate in a criminal gang knowing that the members of the gang engage in a pattern of criminal gang activity; and
(2) knowingly and willfully direct or participate in an underlying crime, or act by a juvenile that would be an underlying crime if committed by an adult, committed for the benefit of, at the direction of, or in association with a criminal gang.

criminal character.'" *Id.* at 407–08, 929 A.2d 157 (quoting *Harris,* 324 Md. at 500, 597 A.2d 956). In determining whether evidence of other bad acts may be admitted pursuant to Md. Rule 5–404(b), the trial court must: 1) determine if the evidence fits into one of the exceptions in the Rule; 2) determine whether the accused's involvement in the other crimes is established by clear and convincing evidence; and 3) weigh the necessity for and probative value of the "other crimes" evidence against any undue prejudice likely to result from its admission. *State v. Faulkner,* 314 Md. 630, 634–35, 552 A.2d 896 (1989) (citations omitted).

■ Generally, we review a trial court's admission or exclusion of relevant evidence for abuse of discretion. *Mines,* 208 Md.App. at 291, 56 A.3d 560 (citations omitted). Maryland appellate courts have found no abuse of discretion in the admission of gang-related evidence. *See generally Burris v. State,* 206 Md.App. 89, 115–16, 47 A.3d 635 *cert. granted,* 429 Md. 81, 54 A.3d 759 (2012), and citations therein. However, these cases typically address evidence introduced under Md. Rule 5–404(b) in order to establish identity or motive, not evidence that is introduced as factual support for a statutory crime. *See, e.g., Gutierrez v. State,* 423 Md. 476, 499, 32 A.3d 2 (2011) (expert testimony on gang affiliations admissible to explain an "otherwise inexplicable act"). "With respect to the admission of 'bad acts' or 'other crimes' evidence, we have plenary review over the legal determination of whether the challenged evidence meets a 'special relevance' exception." *Wilder v. State,* 191 Md.App. 319, 335, 991 A.2d 172 (2010) (citing *Streater v. State,* 352 Md. 800, 809, 724 A.2d 111 (1999)).

■ The evidence in the case at bar was not offered merely as evidence of Marshall's character. The evidence had a particular and significant non-prejudicial relevance—it was necessary to prove the statutory requirements of "two or more underlying crimes" that "were not part of the same incident" and Marshall's participation in a "criminal gang" under CL § 9–801(c). We agree with the State that the statute requires

proving that Marshall engaged in a pattern of behavior with other individuals. To the extent that such evidence may show a "propensity for criminal behavior," the statute clearly allows such evidence as an exception to the Rule, and in fact makes such evidence directly relevant to the offense.

On October 19, 2011, the trial court recognized this, ruling:

Well I have reviewed your submissions and the statutes in question. Obviously we need to find a special circumstance in order to allow this to come in under Maryland 544B [sic] and it would seem to me that the statute in Criminal Law 9801 Ed. Sec. [sic] which talks about the prohibitive act— prohibitive acts in criminal gang activity gives us a special circumstances. I don't see any other way to reconcile these 2 things that unless this is the type of special circumstances that shows motive, opportunity, intent, preparation, common scheme, identity, absence of a state, then it's never admissible and then the charge that the legislature developed involving the gang activity would could not be prosecuted.

So I'm going to have to rule that it is admissible and if I'm wrong, a court will straighten us out on that.

Woods's testimony was offered to prove the statutory requirements that the Spider Gang was a group of "three or more persons" and the testimony regarding Jones's murder, the attempted store robbery, and the robbery of JT's Bar supported a finding of a "[p]attern of criminal gang activity." CL § 9–801(c)–(d). Woods testified that Marshall was present during the robbery of JT's Bar and was "together" with Gotti, purportedly in ordering the robbery, which was relevant to the statutory requirement that Marshall "knowingly and willfully direct or participate in the commission of an underlying crime ... committed ... at the direction of, or in association with a criminal gang." CL § 9–804(a). The fact that the robbery of the bar occurred after the murder is of no consequence because the statute requires "two or more underlying crimes or acts ... not part of the same incident." CL § 9–801(d). The crimes occurred in close temporal proximity and were both related to the gang participation charge. *See*

*Bryant v. State,* 207 Md. 565, 586, 115 A.2d 502 (1955) (evidence of other crimes relevant and admissible if tending to directly prove a defendant guilty of the crime for which he is being tried).

■ We disagree with Marshall that the clear and convincing standard was not met, because he was never charged in connection with the robbery of JT's Bar, as the Rule does not require a defendant be charged with a crime for evidence of "other bad acts" to be admissible. In addition, evidence supporting Marshall's involvement was introduced through Woods's testimony. Marshall's argument that Woods's testimony was not credible goes to its weight, and was an issue for the jury.

We find Marshall's argument that the evidence unfairly prejudiced him to be equally without merit. "The ordinary prohibition against the admission of 'other crimes' evidence 'ensure[s] that a defendant is tried for the crime for which he or she is on trial and to prevent a conviction based on reputation or propensity to commit crimes, rather than on the facts of the present case.'" *Wilder,* 191 Md.App. at 343, 991 A.2d 172 (quoting *Sessoms v. State,* 357 Md. 274, 281, 744 A.2d 9 (2000)). In "the present case," the jury was charged with determining if Marshall had violated the gang statute. Therefore, it was necessary for the jury to be presented with evidence, regarding Marshall's associations and the criminal activities of himself and his associates, as related to the Spider Gang. Accordingly, we find that the trial court did not err or abuse its discretion in denying Marshall's motion *in limine* and admitting evidence of other crimes or bad acts.

## III.

Marshall argues that, pretrial, he moved to dismiss the charge of gang participation resulting in death on the ground that CL § 9–804 was void for vagueness. Marshall directs us to the trial court's statements on October 18, 2011, during argument on a pretrial motion to exclude extrinsic evidence of

other crimes, *see* Sections I and II, *supra*, where the trial court stated:

> The problem is, legislature both State and, and Federal have addressed the problem and looked to address it in the exact opposite way than what you're suggesting. That they're suggesting that you first prove gang involvement. Then you prove what the gang does and then you relate that to how it fits into this case. It is very contrary to the normal methods of, of criminal prosecution because it really goes into the question of intent and so focuses on that before ever considering what the crime that we're considering here is, but I think that that's a legislative response to what is believed to be a very, very substantial problem and unless some higher court says it's not admissible, it's required by statute. **I'm certainly not prepared to suggest that the gang statute in Maryland with the tiny teeth that it has is unconstitutional** and if it is constitutional and it requires proof that the Defendant is a member of a group and then allows in the testimony of what the group does, I mean it's it's like somebody coming in and saying, well, I don't have any political positions, but I'm a member of the United Auto Workers. Doesn't the United Auto Workers have a position? Don't they, they go and, and support particular candidates? I don't do that, but the legislature had said that if United Auto Workers were a criminal organization, being a member of that would make all the parties there responsible for all its actions. I don't see any way around it.

(Emphasis added). In ruling on the motion, the trial court stated that it would allow the State to "get into this area" involving other crimes, particularly the robbery of JT's Bar, and would make additional rulings on the admissibility of evidence "on a question by question basis" after "hear[ing] the witness or the presentation of proof to be sure that the clear and convincing evidence standard for the 5–404(b) standards are met."

The State responds that the issue of the constitutionality of the statute is not preserved for our review. According

to the State, Marshall attempts to "marry far flung parts of the record that are alien to one another" in support of his contention that the trial court rejected his argument that the gang participation charge should have been dismissed. The State contends that Marshall only raised the constitutionality of the statute prior to his first trial, and that the statements of the trial court quoted by Marshall occurred over one year later in connection with the motion in limine to exclude "other crimes" evidence. The State maintains that, following Marshall's mistrial, Marshall waived his motion to dismiss because he did not reassert it when he filed his Md. Rule 4–252 pretrial motions in conjunction with his retrial. We agree with the State.

Our review of the record reveals that on October 30, 2009, prior to his first trial, Marshall filed a motion to dismiss arguing that the gang statute was void for vagueness. On January 22, 2010, a hearing was held on Marshall's motion to dismiss for vagueness. Marshall's then-attorney submitted on his brief and the State argued its opposition to the motion. The motions judge deferred ruling on the motion at that time, stating that she had "skimmed" the parties' submissions but had not "had an opportunity to read them," and wanted to review them before deciding the issue. The hearing was set to resume the following Monday, January 25, 2010. The record indicates that Marshall's motion to postpone the trial was granted, but we can find no record of the disposition of the motion to dismiss based on vagueness.

Marshall's first trial proceeded in July and August 2010, but a motion for a new trial was granted on September 10, 2010. A grant of a new trial effectively wipes out the prior proceedings. *See Cottman v. State*, 395 Md. 729, 743, 912 A.2d 620 (2006) (citations omitted) ("effect of granting a new trial is to leave the cause in the same condition as if no previous trial had been held"). Therefore, any motions that Marshall had filed in connection with his initial trial, whether ruled on or not, were moot.

On October 18, 2010, Marshall filed an omnibus motion prior to his second trial. In the new omnibus motion, Marshall made a motion to dismiss, stating simply: "All charges against this Defendant be dismissed for that there are defects in the institution of the prosecution and in the charging documents." Marshall also "adopt[ed] all motions raised by codefendant(s)," [7] and stated in his "Motions Pursuant to MD Rules 4–252 & 4–253" that "there is a constitutional or statutory defect in the institution of the prosecution in this case."

Md. Rule 4–252 states in pertinent part:

(a) **Mandatory Motions.** In the circuit court, the following matters shall be raised by motion in conformity with this Rule and if not so raised are waived unless the court, for good cause shown, orders otherwise:

(1) A defect in the institution of the prosecution;

(2) A defect in the charging document other than its failure to show jurisdiction in the court or its failure to charge an offense;

(3) An unlawful search, seizure, interception of wire or oral communication, or pretrial identification;

(4) An unlawfully obtained admission, statement, or confession; and

(5) A request for joint or separate trial of defendants or offenses.

\* \* \*

(e) **Content.** A motion filed pursuant to this Rule shall be in writing unless the court otherwise directs, shall state the grounds upon which it is made, and shall set forth the relief sought. A motion alleging an illegal source of information as the basis for probable cause must be supported by precise and specific factual averments. Every motion shall contain or be accompanied by a statement of points and citation of authorities.

\* \* \*

---

**7.** No codefendant motions were included in the record.

### h) Effect of Determination of Certain Motions.

(1) *Defect in Prosecution or Charging Document.* If the court grants a motion based on a defect in the institution of the prosecution or in the charging document, it shall order the defendant released on personal recognizance unless the crime charged is a crime of violence as defined in Code, Criminal Law Article, § 14–101, in which case the court may release the defendant on any terms and conditions that the court considers appropriate or may order that the defendant be remanded to custody for a specific time period not to exceed ten days pending the filing of a new charging document.

However, the type of defect contemplated by Md. Rule 4–252 does not apply to the constitutionality of the statute under which a defendant is charged. Rather, it goes to "the constitutional requirement contained in Article 21 of the Maryland Declaration of Rights that each person charged with a crime must be informed of the accusation against him." *Williams v. State,* 302 Md. 787, 790–91, 490 A.2d 1277 (1985) (citations omitted). As the Court of Appeals has explained, "[t]he obvious and necessary purpose of that requirement [in 4–252(e) ] is to alert both the court and the prosecutor to the precise nature of the complaint, in order that the prosecutor have a fair opportunity to defend against it and that the court understand the issue before it." *Denicolis v. State,* 378 Md. 646, 660, 837 A.2d 944 (2003) (alterations added).

The effect of defects in an omnibus motion filed pursuant to Md Rule 4–252 were addressed in *Denicolis,* where the defendant was "charged by criminal information with two counts of solicitation to commit murder" but "[n]either count identified the intended victim." *Id.* at 651, 837 A.2d 944. When Denicolis filed an omnibus Rule 4–252 motion, he "moved '[t]hat all charges against this Defendant be dismissed for that there are defects in the institution of the prosecution and in the charging documents.' Nowhere in that motion, or in any other motion or submission to the court, did [Denicolis] attempt to identify or articulate the defects he believed existed." *Id.* at 652, 837 A.2d 944.

The Court of Appeals expressed disapproval of such motions as follows:

It has apparently become the practice for some defense counsel to file this kind of motion, seeking a panoply of relief based on bald, conclusory allegations devoid of any articulated factual or legal underpinning, presumably in the belief that if the motion complies with the time requirement of Rule 4–252(b), compliance with Rule 4–252(e) is unnecessary. That is not the case. If a motion fails to provide either a factual or legal basis for granting the requested relief, it cannot be granted. Recognizing the time constraints under which defense counsel and *pro se* defendants often operate, however, some courts have routinely overlooked the impermissible generality of such motions and have permitted the defendant to make the complaint more specific at, or in preparation for, a hearing on the motion. Although that practice is not what the Rule anticipates and is not to be encouraged, we have not disturbed the discretion of the trial courts to permit defendants to supplement unsupported allegations in the motion at or before the hearing, at least where the State is not unduly prejudiced by being called upon to respond immediately to allegations of which it had no prior notice.

*Id.* at 660–61, 837 A.2d 944. In the case at bar, Marshall's second trial was presided by a different judge than the first, who admitted at the start of trial on October 18, 2011, that he was unfamiliar with the case. Absent an explanation of the nature of the "constitutional or statutory defect in the institution of the prosecution" in Marshall's case, the second trial court would not have reason to know that Marshall was attempting to reassert the motion to dismiss based on a void-for-vagueness constitutional challenge. In arguing his pretrial motions on October 18, 2011, Marshall did not raise the issue that the statute was unconstitutionally vague, rather he challenged how the statute permitted evidence of other crimes to be used to prove a violation. The trial court's comments on the constitutionality of the statute were unsolicited and nothing more than *obiter dictum*.

We find no evidence that Marshall renewed his motion to dismiss the gang charges based on the constitutionality of the statute. If Marshall's omnibus motion was an attempt to do so, it failed to comply with the requirements of Md. Rule 4–252(e). Marshall's attempt to have us read the trial court's unsolicited comment on the constitutionality of the statute out of context is unpersuasive. As Marshall made no argument, regarding that part of the omnibus motion that we can discern from the record, the issue is not preserved for our review.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY AFFIRMED. COSTS TO BE PAID BY APPELLANT.**