Present:  Hassell, C.J., Lacy, Keenan, Koontz, Kinser, and
Lemons, JJ., and Compton, S.J.

COMMONWEALTH OF VIRGINIA

v. Record No. 030401   OPINION BY JUSTICE CYNTHIA D. KINSER
                                  January 16, 2004
KURVYN DARNELL MINOR

FROM THE COURT OF APPEALS OF VIRGINIA


     In this appeal, we consider whether a defendant, who
was indicted for offenses against three victims occurring
on three different dates, should have been granted separate
trials for the offenses allegedly committed against each
victim.  We conclude that the trial court abused its
discretion in denying the defendant's motion to sever the
charges because evidence of the other crimes was not
relevant to the only contested issue, whether each victim
did or did not consent to sexual intercourse.  We will
therefore affirm the judgment of the Court of Appeals,
which reversed the trial court's judgment and the
defendant's convictions.

PRIOR PROCEEDINGS

     The defendant, Kurvyn Darnell Minor, was charged with
14 offenses that arose out of three separate incidents
involving three different victims.  First, he was charged
with the April 3, 2000, abduction of C.M. and use of a
firearm in the commission of that felony.  Second, he was

charged with the April 13, 2000 abduction, rape, robbery, oral sodomy, attempted anal sodomy, credit card theft, and use of a firearm in the commission of a felony, all against W.S. Third, the defendant was charged with the September 30, 2000, abduction, rape, robbery, oral sodomy, and anal sodomy of G.C.

Minor filed a motion to sever the charges, asking that he be tried separately for the offenses related to each victim. He asserted that evidence admissible in the trial of the charges involving one victim would not be relevant to the other offenses involving different victims. The Commonwealth opposed the defendant's motion and moved for joinder of the charges in a single trial. In a memorandum in support of its motion for joinder, the Commonwealth stated that, "[i]n the present case, modus operandi, opportunity, relationship to the victims, absence of mistake or accident and interconnection of the offenses are all relevant to the trial of these three cases." The Commonwealth also stated that "[t]he place of attack, the type of victim, the method of transportation, the topics of conversation and other factors are sufficiently idiosyncratic to permit an inference of pattern or purpose for proof showing a common predator or common modus operandi."

At a hearing on the parties' motions, the Commonwealth admitted that there was no dispute regarding the identity of the perpetrator in the charged offenses. Despite that admission, the Commonwealth stated that the evidence of other crimes was admissible "to show that the defendant's modus operandi was the same." The defendant, however, suggested that the only contested issue was whether the victims consented to sexual intercourse. Defense counsel acknowledged that Minor had admitted, in a statement to the police, that he knew these women and had contact with them, including sexual intercourse. Defense counsel then stated, "I don't think that it's going to be the Commonwealth's position necessarily that on the issue of whether it was consensual or not that there was — there's something so unique that occurred between the women that [the Commonwealth] would need to try all the cases on the same day in order to present that issue." The Commonwealth did not disagree with that statement.

The trial court granted the Commonwealth's motion for joinder of the indictments for trial, finding that joinder was proper under Rule 3A:10(c). At trial, Minor did not testify. The court instructed the jury on the issue of consent only with regard to the victim identified as W.S. That instruction stated:

3

> Consent by [W.S.] is an absolute bar to a conviction of rape. However, consent, once given, may be withdrawn prior to sexual intercourse. If after consideration of all of the evidence you have a reasonable doubt as to whether [W.S.] consented to have intercourse with the defendant, then you shall find him not guilty.

The jury convicted Minor of three counts of abduction; two counts each of rape, oral sodomy, and robbery; and one count each of anal sodomy, attempted anal sodomy, credit card theft, and use of a firearm in the commission of abduction. The jury fixed Minor's total punishment for these convictions at two life sentences plus 113 years imprisonment. The trial court, however, struck the charge of attempted anal sodomy and reduced the defendant's sentence to 108 years plus two life sentences.

Minor appealed the trial court's judgment to the Court of Appeals. In an unpublished opinion reversing the judgment of the trial court, the Court of Appeals held that, under Rule 3A:10(c), justice required separate trials because "[n]either the number of alleged victims nor the strength of similarities between or among the offenses has any bearing on the admissibility of evidence of other offenses where, as here, the only issue genuinely in dispute is whether the acts were consensual or forcible." Minor v. Commonwealth, No. 3105-01-2, slip op. at 11 (Dec.

31, 2002).  The Commonwealth appeals from the judgment of the Court of Appeals.

MATERIAL FACTS

The three incidents at issue occurred in the late evening to early morning hours on the respective dates alleged in the indictments.  Minor approached each pedestrian victim within the same relative area on the north side of the City of Richmond and identified himself as "Kevin Wilkinson" to C.M. and as "Kevin" to W.S.  He offered each one a ride in his vehicle, which C.M. and W.S. willingly accepted by getting into Minor's vehicle.  Although G.C. initially accepted Minor's offer of a ride to her home, she refused to get into his car when Minor told her that he wanted to take her to his house.  At that point, Minor pulled out a knife, held it to G.C.'s throat, made her get into his vehicle, and told her that he was going to rape her.

After each victim got into his vehicle, whether willingly or otherwise, Minor drove along Interstate 95, taking each victim to a secluded area in Hanover County. Minor took C.M. and W.S. to a location near a church, and he took G.C. to a wooded area about a mile away from the same church.

C.M. testified that, as she and Minor traveled to Hanover County, they discussed "getting together, having sexual performance or act, and I, you know, didn't mind at that particular time." She further testified that she and Minor agreed to stop at a gasoline station, where she purchased a condom using Minor's money. According to C.M., Minor then told her "that he wanted anal sex." At that point, C.M. objected, "I said no, that's okay. I change my mind. I don't want to do that." C.M. testified that Minor's "whole tone and attitude just change[d]" then and "his voice [got] real harsh and nasty."

When Minor stopped his vehicle near the church, he took the keys out of the ignition and went back to the trunk of the vehicle. As he started to reenter the vehicle, C.M. "jumped out" and went over by the church. Minor then drove away "real fast" but suddenly stopped, backed up, and told C.M. that he was not going to leave her there. He ordered C.M. to get back into the vehicle, but she refused. Minor pointed an "object out of the car that look[ed] like a gun," and C.M. started running behind the church. As she ran, C.M. heard a sound "[l]ike a firecracker or a pop."

When W.S. got in Minor's car, he offered her $100 "[t]o have some sex." W.S. agreed and testified that, as

6

they were driving along, Minor was "a very nice, very nice guy." However, W.S. stated that "all of a sudden on the interstate, he started getting — attitude start[ed] changing, . . . he really was getting very forceful . . . ." According to W.S., Minor forced her to perform oral sodomy on him while he was driving on the interstate.

Minor stopped his vehicle in the middle of a road near the church. W.S. testified that they had vaginal sexual intercourse in the front seat of the vehicle and that she did so because she was scared. Minor also attempted to have anal sodomy with W.S. Eventually, Minor drove to another location where he pulled out a gun and pointed it at W.S.'s head, telling her not to scream. W.S. then opened the passenger door, and as she was trying to exit the vehicle, Minor grabbed her purse, which contained her identification and a credit card. He then drove away. In the early morning hours of April 13, 2000, Minor attempted to use that credit card three times at two different automatic teller machines.

After Minor made G.C. get into his car, he drove along Interstate 95 and stopped in a wooded area. According to G.C., Minor dragged her out of his vehicle with a knife held to her throat and then took her back to the vehicle where he started removing her clothes. G.C. testified that

7

Minor forced her to engage in acts of vaginal intercourse, oral sodomy, and anal sodomy, while "poking" her with the knife or "bang[ing]" her head on the vehicle.  Minor drove off, leaving G.C. in the woods and taking most of her clothes, her cellular telephone, a pager, and approximately $40 in cash.

Evidence established that, during a traffic stop in May 2000, a police officer seized a handgun from Minor. That seizure took place after the first two incidents at issue had transpired but before the third one occurred.

ANALYSIS

It is well established in our jurisprudence that evidence of other offenses is generally not admissible to prove guilt of the crime for which a defendant is presently on trial.  See Stockton v. Commonwealth, 227 Va. 124, 142, 314 S.E.2d 371, 383 (1984); Moore v. Commonwealth, 222 Va. 72, 76, 278 S.E.2d 822, 824 (1981); Eccles v. Commonwealth, 214 Va. 20, 22, 197 S.E.2d 332, 333 (1973).  This is so because "[s]uch evidence implicating an accused in other crimes unrelated to the charged offense . . . may confuse the issues being tried and cause undue prejudice to the defendant."  Guill v. Commonwealth, 255 Va. 134, 138, 495 S.E.2d 489, 491 (1998).  There are, however, some recognized exceptions to this general principle:

> "Evidence of other offenses is admitted if it shows the conduct and feeling of the accused toward [the] victim . . . or if it tends to prove any relevant element of the offense charged. Such evidence is permissible in cases where the motive, intent or knowledge of the accused is involved, or where the evidence is connected with or leads up to the offense for which the accused is on trial. Also, testimony of other crimes is admissible where the other crimes constitute a part of the general scheme of which the crime charged is a part."

Satcher v. Commonwealth, 244 Va. 220, 230, 421 S.E.2d 821, 828 (1992) (quoting Kirkpatrick v. Commonwealth, 211 Va. 269, 272, 176 S.E.2d 802, 805 (1970)); accord Scates v. Commonwealth, 262 Va. 757, 761, 553 S.E.2d 756, 759 (2001); Turner v. Commonwealth, 259 Va. 645, 651, 529 S.E.2d 787, 790-91 (2000). For such evidence to be admissible under one of these exceptions, the legitimate probative value of the evidence must outweigh its prejudicial effect. Guill, 255 Va. at 139, 495 S.E.2d at 491-92; Satcher, 244 Va. at 231, 421 S.E.2d at 828.

The question whether an accused, pursuant to Rule 3A:10(c), can be tried in a single trial for all offenses then pending against that defendant is a matter resting within a trial court's sound discretion. Cheng v. Commonwealth, 240 Va. 26, 33, 393 S.E.2d 599, 603 (1990) (citing Fincher v. Commonwealth, 212 Va. 552, 553, 186 S.E.2d 75, 76 (1972); Bryant v. Commonwealth, 189 Va. 310,

9

315, 53 S.E.2d 54, 56 (1949)).  Thus, on appeal, a trial court's decision to join different offenses for trial will not be reversed absent a showing that the court abused its discretion.  Cheng, 240 Va. at 33-34, 393 S.E.2d at 603.

The issue in this appeal is whether "justice" required separate trials under Rule 3A:10(c).  To resolve that issue, we must determine whether evidence showing the defendant's rape of one victim was relevant to prove that a different victim did not consent to sexual intercourse. The only contested issue identified at the hearing on the defendant's motion to sever the charges was whether the victims consented.  Similarly, the Court of Appeals stated that "the only issue genuinely in dispute [was] whether the acts were consensual or forcible."[1]  Minor, No. 3105-01-2, slip op. at 11.

Before answering that evidentiary question, we must clarify one matter with regard to a defendant's intent to commit the crime of rape vis-à-vis a victim's lack of consent to sexual intercourse.  The Commonwealth never articulated at trial exactly to what relevant issues the evidence of other crimes pertained.  However, the Commonwealth maintains on appeal that such evidence was

10

admissible to show the defendant's intent and thus the victims' lack of consent to sexual intercourse.  In its argument, the Commonwealth seems to equate those two issues.  For example, the Commonwealth states on brief, "Simply put, the other crimes evidence here showed the defendant's intent, in each instance, to force the victim to submit to sexual contacts of various sorts, regardless of the victim's wishes."  In discussing the decision of the Court of Appeals in this case, the Commonwealth asserts that "the Court of Appeals has established a rule of law that prohibits the introduction of other crimes evidence in rape cases when the principal issue to be resolved is whether the sexual act was consensual."  But, in the same paragraph, the Commonwealth states that the decision in Moore "clearly holds that other crimes evidence is admissible on the issue of intent."

However, a defendant's intent to commit the crime of rape is not the same issue as whether a victim consented to sexual intercourse.  Those two issues are distinct and should not be blurred.

> Although proof of rape requires proof of intent, the required intent is established upon proof that the accused knowingly and

---

[1]  On appeal to this Court, neither party challenged the scope of the contested issue addressed by the Court of Appeals.

11

> intentionally committed the acts constituting the elements of rape. The elements of rape . . . consist of engaging in sexual intercourse with the victim, against her will, by force, threat, or intimidation. (Emphasis added.)

Clifton v. Commonwealth, 22 Va. App. 178, 184, 468 S.E.2d 155, 158 (1996); see also, People v. Mangiaracina, 424 N.E.2d 860, 863 (Ill. App. Ct. 1981) ("[W]hether the defendant intended to commit the offenses without the victim's consent is not relevant, the critical question being whether the victim did, in fact, consent. This involves her mental state, not the defendant's."); Commonwealth v. Grant, 464 N.E.2d 33, 36 (Mass. 1984) (the crime of rape does not require proof that the defendant harbored a "specific intent that the intercourse be without consent"); State v. Ayer, 612 A.2d 923, 925 (N.H. 1992) (Rape is generally considered to be "a general intent, rather than a specific intent, crime. . . . [T]he general intent requirement for rape means that 'no intent is requisite other than that evidenced by the doing of the acts constituting the offense.'") (citations omitted). The issue of a victim's consent pertains to the element of rape requiring proof that sexual intercourse was against the victim's will, not to whether a defendant "knowingly and intentionally committed" the acts constituting rape. Clifton, 22 Va. App. at 184, 468 S.E.2d at 158.

We now turn to the dispositive evidentiary question. In doing so, we recognize that evidence showing that a defendant committed similar sexual offenses against an individual other than the victim in a particular case is, on occasion, admissible to prove certain contested matters, such as a defendant's identity or the attitude of a defendant toward a victim, provided the probative value of the evidence outweighs its prejudicial effect. See Satcher, 244 Va. at 231, 421 S.E.2d at 828. Indeed, if the evidence of other similar offenses had been offered as proof on a contested issue about the defendant's identity in these offenses, that evidence would likely have been admissible.

In fact, this Court reached that exact result in Satcher, a case in which the defendant denied committing the crimes and identity was an issue. Satcher was convicted in one trial of the robbery, assault and battery, and attempted rape of Deborah Abel; and the robbery, rape, and capital murder of Ann Elizabeth Borghesani. Id. at 225, 421 S.E.2d at 824. We upheld the trial court's denial of Satcher's motion for separate trials. Id. at 229, 421 S.E.2d at 827. We stated that the evidence of the Abel offenses would have been admissible in a separate trial for the Borghesani offenses because that evidence established

13

Satcher as the assailant in both crimes.  Id. at 229-30, 421 S.E.2d at 827; see also Turner, 259 Va. at 651, 529 S.E.2d at 790-91 (evidence of similar offenses involving different victims was admissible to prove a common perpetrator); Spencer v. Commonwealth, 240 Va. 78, 89, 393 S.E.2d 609, 616 (1990) (same); Hewston v. Commonwealth, 18 Va. App. 409, 412, 444 S.E.2d 267, 268-69 (1994) (same); cf. Herron v. Commonwealth, 208 Va. 326, 327-28, 157 S.E.2d 195, 196-97 (1967) (evidence of other incidents of sexual intercourse with the same victim was admissible to show the defendant's disposition with respect to the particular act charged).

Also, in Moore, a case discussed at length by the Commonwealth on brief, we approved the admission of evidence concerning a sexual offense against a third party but not for the purpose of proving the victim's lack of consent.  There, the defendant was charged both with enticing a male child under the age of 14 to enter a house for the purpose of fondling or feeling the sexual or genital parts of the child and with the actual fondling of that child.  222 Va. at 73, 278 S.E.2d at 823.  The challenged testimony concerned the defendant's subsequent attempted homosexual act upon the third party, also a teen-ager.  That subsequent offense occurred at the defendant's

14

office when the victim and the third party were both present.  During that encounter, the defendant described homosexual acts he had performed with other boys, offered the victim and the third party money to engage in similar acts with him, pulled down the third party's pants, told the victim to hold the third party, and attempted to perform a sexual act upon the third party.  Id. at 75, 278 S.E.2d at 824.  Although the evidence involved an offense against a third party, we noted that it also concerned the victim and "showed the conduct or attitude of the defendant toward [the victim], indicated the ongoing nature of their relationship, and negated the possibility that the defendant's touching of [the victim] in the [prior] incident was accidental or for a purpose misunderstood by [the victim]."  Id. at 77, 278 S.E.2d at 825.

In our view, evidence showing that a defendant raped one or more individuals other than the victim in the crime charged is generally not relevant to the question whether that victim did or did not consent to sexual intercourse with the defendant.  This is so because "[t]he fact that one woman was raped . . . has no tendency to prove that another woman did not consent."  Lovely v. United States, 169 F.2d 386, 390 (4th Cir. 1948); accord Foster v. Commonwealth, 5 Va. App. 316, 320, 362 S.E.2d 745, 747 (Va.

15

Ct. App. 1987); see also Brown v. State, 459 N.E.2d 376, 379 (Ind. 1984) (where the only issue was consent of the prosecutrix, evidence of prior rapes was not admissible because the fact that one woman was raped did not tend to prove that another woman did not consent); State v. Christensen, 414 N.W.2d 843, 847 (Iowa Ct. App. 1987) ("[n]either . . . does one woman's lack of consent to intercourse with a man imply a different woman's lack of consent to intercourse with the same man"); State v. Hatcher, 372 So.2d 1024, 1034 n.1 (La. 1979) (in a prosecution for rape where the only issue is consent, "[t]he lack of consent by other victims is not probative of lack of consent by the complainant of the charged offense"); State v. Alsteen, 324 N.W.2d 426, 429-30 (Wis. 1982) (evidence of defendant's prior acts had no probative value on the issue of the complainant's consent because "[c]onsent is unique to the individual"); cf. Winfield v. Commonwealth, 225 Va. 211, 218, 301 S.E.2d 15, 19 (1983) ("there is no logical connection between a woman's willingness to submit to the defendant accused of raping her, and her willingness to share intimacies with another man with whom she might have had a special relationship").

As the court in Lovely explained, "evidence of other similar offenses is held admissible for the purpose of

establishing intent in cases of assault with the intent to commit rape . . . , and evidence of other offenses of like character is admissible in prosecutions for crime involving a depraved sexual instinct." 169 F.2d at 390. However, the court observed that "the overwhelming weight of authority is that such evidence is not admissible in prosecution for rape" for obvious reasons.[2] Id. "Other attempts to ravish have a tendency to show that an assault under investigation was made with like intent. Acts showing a perverted sexual instinct are circumstances which with other circumstances may have a tendency to connect an accused with a crime of that character." Id. But, as already noted, the issue of consent concerns a victim's state of mind and is unique with regard to each individual victim.[3]

---

[2] We recognize that the decision in Lovely predates the adoption of Fed. R. Evid. 413. However, that rule states that evidence of a defendant's commission of similar sexual offenses is admissible and "may be considered for its bearing on any matter to which it is relevant." (Emphasis added.)

[3] The Commonwealth argued on brief that the Court of Appeals' reliance on the decision in Lovely was misplaced because of the later decision of the Fourth Circuit Court of Appeals in United States v. Beahm, 664 F.2d 414 (4th Cir. 1981). We do not agree. In Beahm, the court approved the admission of testimony from two male witnesses, neither of whom was a victim in the case being tried. That testimony showed that the defendant had made sexual advances to them within three years prior to the offenses

Based on the specific circumstances presented in this case, we hold, as did the Court of Appeals, that "the testimony of each victim . . . was inadmissible at the trial for the offenses allegedly committed against each of the other victims."[4]  Minor, No. 3105-01-2, slip op. at 11. For that reason, we conclude that the trial court abused its discretion in denying the defendant's motion to sever the charges and will therefore affirm the judgment of the Court of Appeals.

Affirmed.

---

at issue.  The evidence was admissible because the "defendant was insisting that under the Virginia statute the burden was on the government to show that defendant's acts were performed with lascivious intent and did not occur by accident."  Id. at 417.  The evidence was not admitted to prove whether the victim consented.

[4]  As the Court of Appeals noted, it is not necessary to decide whether the charged offenses satisfied the requirements of Rule 3A:6(b) because "justice" required separate trials.  Rule 3A:10(c).