COURT OF APPEALS OF VIRGINIA

Present: Judges Humphreys, Malveaux and Senior Judge Frank
Argued at Hampton, Virginia

**PUBLISHED**

SHANNON SHAMAR COUSETT

OPINION BY
v.      Record No. 0967-18-1      JUDGE ROBERT J. HUMPHREYS
NOVEMBER 5, 2019

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
Steven C. Frucci, Judge[1]

Annette Miller, Senior Trial Attorney (Office of the Public Defender,
on brief), for appellant.

Mason Williams, Assistant Attorney General (Mark R. Herring,
Attorney General; Kelsey M. Bulger, Assistant Attorney General, on
brief), for appellee.

On February 6, 2017, appellant Shannon Shamar Cousett ("Cousett") was indicted in the

Circuit Court of the City of Virginia Beach ("circuit court") on the following charges: one count

of rape of T.H., in violation of Code § 18.2-61; one count of abduction of I.P., in violation of

Code § 18.2-47; burglary with the intent to commit larceny/assault/battery, in violation of Code

§ 18.2-91; and burglary with the intent to commit rape/robbery/murder, in violation of Code

§ 18.2-90. Cousett was also charged with assault and battery, in violation of Code § 18.2-57.

The Commonwealth alleged that Cousett committed all offenses on or about August 6, 2016.

Before trial, Cousett moved to sever the charges, arguing that the charges involving T.H. should

---

[1] Judge Frucci presided over the trial of this case and signed the final order. Judge
Stephen C. Mahan presided over the hearing on the Cousett's motion to sever the offenses for
separate trials.

be severed from those charges involving I.P. The circuit court, however, denied Cousett's motion.

After a bench trial on December 5, 2017, the circuit court found Cousett guilty of all charges. The circuit court later sentenced Cousett to a total of fifty years and 365 days of incarceration, with ten years suspended. On appeal, Cousett argues that the circuit court "erred in not severing the [I.P.] and [T.H.] offenses inasmuch as the Commonwealth did not prove, under Rule 3A:10(c) of the Rules of the Supreme Court of Virginia, that (1) justice did not require separate trials; and (2) that the offenses met one of the criteria as set out in Rule 3A:6."

## I. BACKGROUND

On August 6, 2016, at approximately 9:30 p.m., T.H. woke up "to a man [she] did not know inside of [her] in [her] bed." T.H. clarified that her characterization of the incident meant that the unknown man forced his penis inside her vagina. T.H. described the man as a "[t]all African-American" man with a "black do-rag on his head." After waking up to the assault, T.H. screamed, yelled, and chased the man out of her apartment. As T.H. chased the man, T.H. saw him grab a white bag by the front door of the apartment. T.H. later observed that she was missing fifty dollars, a money order, and a beer from her refrigerator. T.H. was unable to identify her assailant.

Approximately ten minutes before the assault took place, T.H.'s neighbor, N.B., observed a black male standing on the stairs of the apartment complex, wearing all-black clothing and a black "do-rag." He also described that the black male was carrying a white "book bag." A few minutes later, N.B. witnessed the same black male walk out of T.H.'s apartment building at a fast pace and followed by T.H. According to N.B., T.H. "started breaking down into tears" and stated, "I woke up and he was next to me." N.B. later identified the black male as Cousett, both in a photo lineup and at Cousett's trial. Detective Jeffrey Michael Oglesby ("Detective

Oglesby") of the Virginia Beach Police Department administered the photo array to N.B. the night of the assault on T.H.

Approximately two hours after the assault on T.H., and within half a mile of T.H.'s apartment, Cousett entered I.P.'s apartment. At the time, I.P. was sitting on her sofa, and her front door was unlocked. I.P. described Cousett as "a little bit over average height," African-American, and in his mid-to-late forties or early fifties. I.P. also stated that Cousett was wearing dark clothing and had a "cream colored bag slung over his . . . right shoulder." I.P. described that after Cousett entered her apartment, Cousett "latche[d] the door closed and he turn[ed] around and [said] shh to [her]." I.P. subsequently ran to the door to unlatch it. Cousett repeatedly punched I.P. on the right side of her head, "four to six" times, until I.P. was able to unlatch the door. When I.P. twisted the door handle to open it, Cousett pushed the door open and ran out of the apartment. I.P. was unable to identify Cousett in a photo lineup, but she identified Cousett as her assailant at Cousett's preliminary hearing and trial.

Canvassing the area of the two incidents later that night, Officer William Patrick Ahern, Jr. ("Officer Ahern"), of the Virginia Beach Police Department discovered a white "drawstring" bag on a bench in the "convention center area," approximately a quarter of a mile from I.P.'s apartment. After Officer Daley of the Virginia Beach Police Department arrived on the scene, Officer Ahern observed a cell phone, money, and Cousett's identification card inside of the bag. Additionally, Officer Ahern observed two red spots on the outside of the bag that he believed to be blood stains.

On February 6, 2017, a grand jury indicted Cousett on multiple charges stemming from the night of August 6, 2016. Regarding the incident involving T.H., the grand jury charged Cousett with one count of rape of T.H. and burglary with the intent to commit rape/robbery/murder. Regarding the incident involving I.P., the grand jury charged Cousett with

- 3 -

one count of abduction and burglary with the intent to commit larceny/assault/battery. Cousett was also charged with one count of assault and battery against I.P.

Before trial, Cousett moved to sever the charges involving T.H. from those involving I.P.[2] On May 22, 2017, following a hearing, the circuit court denied Cousett's motion.[3] Cousett subsequently pleaded not guilty to all charges against him.

A bench trial took place on December 5, 2017. There, the Commonwealth called eight witnesses, including T.H., N.B., I.P., Officer Ahern, and Detective Oglesby. Cynthia James ("James"), a security officer at the Virginia Beach Convention Center, also testified for the Commonwealth. James worked the night shift from approximately midnight to 8:00 a.m. James testified that sometime during the night of August 6, 2016, she witnessed two Virginia Beach police officers retrieve a white bag from a bench outside of the convention center. James also testified that later that same night, an African-American male, around "forty-ish" with a bald head and dark clothing, rang the convention center's doorbell. James explained that the man asked her "if [she] seen [sic] his white bag" or "if any of [her] guards saw the bag."

Officer Ryan Daniel Coon ("Officer Coon") of the Virginia Beach Police Department testified at the trial about a consensual encounter with Cousett a few days prior to the attacks on T.H. and I.P. Specifically, Officer Coon testified that on August 3, 2016, at approximately 3:45 a.m. he spoke with Cousett behind a closed business. The consensual encounter took place

---

[2] Although the Commonwealth filed a written response to Cousett's motion for severance, Cousett never filed a written motion to sever.

[3] After denying Cousett's motion to sever, the circuit court noted that it would be willing to revisit the motion if Cousett was "successful in a pretrial motion or a motion in limine of some type in excluding that evidence that you were hoping at some point to exclude." Cousett, however, never filed any pretrial motions seeking to limit the circuit court's consideration of any evidence. Therefore, to the extent that Cousett now argues that the evidence adduced at trial would not have been admissible in separate trials, consideration of that argument is barred pursuant to Rule 5A:18.

in the vicinity of where the crimes against T.H. and I.P. occurred a few days later. Officer Coon described Cousett as wearing a black t-shirt, a tan hat, and khaki shorts. Officer Coon also noted that Cousett was carrying a "white bag." Officer Coon, however, neither observed nor had any interaction with Cousett on August 6, 2016.

At the conclusion of the Commonwealth's evidence, Cousett made what the circuit court recognized as a motion to strike and renewed motion to strike the evidence incorporated into his closing argument. The circuit court, however, denied Cousett's motion to strike and found Cousett guilty of all charges. On May 30, 2018, the circuit court sentenced Cousett to a total of fifty years and 365 days in prison, with ten years suspended.[4] This appeal follows.

## II. ANALYSIS

### A. Standard of Review

"The question whether an accused, pursuant to Rule 3A:10(c), can be tried in a single trial for all offenses then pending against that defendant is a matter resting within a trial court's sound discretion." Commonwealth v. Minor, 267 Va. 166, 172 (2004) (citing Cheng v. Commonwealth, 240 Va. 26, 33 (1990)). Accordingly, "[t]he circuit court's decision to join offenses for trial is reviewed for abuse of discretion." Walker v. Commonwealth, 289 Va. 410, 415 (2015) (citing Scott v. Commonwealth, 274 Va. 636, 644 (2007)). A lower court's interpretation and application of the Rules of the Supreme Court, however, presents a question of law that we review *de novo*. See id. (citing LaCava v. Commonwealth, 283 Va. 465, 471 (2012)).

---

[4] The circuit court sentenced Cousett to ten years in prison for the abduction charge, specifically, but suspended all of that sentence.

## B. Joinder of Offenses

Rule 3A:10(c) states that "[t]he court may direct that an accused be tried at one time for all offenses then pending against him, if justice does not require separate trials and (i) the offenses meet the requirements of Rule 3A:6(b) or (ii) the accused and the Commonwealth's attorney consent thereto." Here, because Cousett did not consent to be tried in a single trial for the charged offenses, "the Commonwealth was required to establish both of the two other conditions of Rule 3A:10(c), namely, that the offenses satisfied the requirements of Rule 3A:6(b), and that justice did not require separate trials." Scott, 274 Va. at 644.

Rule 3A:6(b), in turn, provides that two or more offenses may be joined in a single indictment "if the offenses are based on the same act or transaction, or on two or more acts or transactions that are connected or constitute parts of a common scheme or plan." Notably, "[o]ur Supreme Court has held that the terms 'common scheme' and 'common plan' are not synonymous." Stickle v. Commonwealth, 68 Va. App. 321, 339 (2017) (some internal quotation marks omitted) (quoting Scott, 274 Va. at 645). However, neither are they mutually exclusive. Scott, 274 Va. at 646. In Scott, our Supreme Court defined both terms for the first time. A common scheme is composed of "crimes that share features idiosyncratic in character, which permit an inference that each individual offense was committed by the same person or persons as part of a pattern of criminal activity involving certain identified crimes." Id. at 645 (citations omitted). A common plan consists of "crimes that are related to one another for the purpose of accomplishing a particular goal." Id. at 646 (citations omitted). Further, our Supreme Court has stated that "offenses may be considered parts of a common scheme or plan when they are 'closely connected in time, place, and means of commission,'" all of which supports the use of a single trial. Walker, 289 Va. at 416 (quoting Satcher v. Commonwealth, 244 Va. 220, 229 (1992)).

- 6 -

While somewhat disjointed, Cousett's argument proceeds on two fronts. First, Cousett argues that the circuit court erred in permitting the joinder of his charges because the evidence did not show "enough" of a common scheme or plan. Second, Cousett argues that justice required separate trials because the Commonwealth improperly used I.P.'s identification to bolster the T.H. case. More specifically, Cousett relies upon T.H.'s inability to identify her assailant to argue that the Commonwealth utilized I.P.'s identification "to taint the [T.H.] case and provide a nonexistent identification." Accordingly, Cousett argues that the circuit court's failure to sever the charges involving T.H. from those involving I.P. amounted to an abuse of discretion.

As a preliminary matter, the Commonwealth contends that "[h]ere, the offenses were connected, and also constituted a common scheme." Presumptively, the Commonwealth intended to suggest that the charged offenses were *either* "based . . . on two or more acts or transactions that are connected" *or* part of a common scheme. See Rule 3A:6(b). The Commonwealth's supporting argument and analysis, however, limits the argument to only the "common scheme" requirement under Rule 3A:6(b). Accordingly, we disregard any argument by the Commonwealth suggesting that the charges against Cousett resulted from the same acts or transactions. See Rule 5A:21(d).

The Commonwealth was required to establish that the charges against Cousett were "closely connected in time, place, and means of commission." Walker, 289 Va. at 416 (quoting Satcher, 244 Va. at 229). Here, we conclude that, while connected in time and place, there were insufficient commonalities in the "means of commission" to support a common plan. In looking at the similarities between the actions committed by the perpetrator in both the T.H. and I.P. cases, there are not enough points of commonality to warrant joinder of the trials. The Commonwealth's evidence reflects that Cousett entered I.P.'s apartment, located less than half a

mile from T.H.'s apartment, approximately two hours after breaking into T.H.'s apartment and raping her. However, the only evidence presented by the Commonwealth to establish a common plan was that Cousett entered the residences of two female victims through closed but unlocked front doors. Beyond those two points of similarity, both the indictments and the evidence reflect that the nature of the offenses committed during the two incidents are different.

The purpose of Rule 3A:10(c) is to strike a balance between judicial economy and the danger of unfair prejudice. See Godwin v. Commonwealth, 6 Va. App. 118, 123 (1988) ("The efficiency promoted by joinder of offenses does not outweigh the harm caused by the introduction of *inadmissible* evidence of another crime." (emphasis added)). The purpose of a joint trial is not to bypass the requirement of presenting evidence establishing the identity of the perpetrator for each offense *as may be done with other crimes evidence under Virginia Rule of Evidence 2:404(b)*. There is no indication that Cousett entered I.P.'s apartment with the intent to sexually assault her as was the case with T.H., and he was not charged to that effect. In fact, as soon as I.P. unlatched the door Cousett ran off the premises.

The Commonwealth's argument that the offenses were similar because Cousett entered the apartments of two women through closed, unlocked front doors is the only commonality in these incidents and is insufficient to join the offenses for trial because "the methods employed in each [offense] were 'not unusual,' and the transactions were not 'connected' within the meaning of Rule 3A:6(b)." Purvis v. Commonwealth, 31 Va. App. 298, 306 (2000). Thus, these two similarities in the means of commission between the two incidents are insufficient to tie the offenses together as a common scheme and the circuit court erred in so holding.

### C. Harmless Error

Although the circuit court's denial of Cousett's motion to sever was error, the error does not necessarily require reversal. See id. at 307. "Errors, defects, irregularities or variances that

- 8 -

do not affect substantive rights shall not constitute reversible error." Rule 3A:2(a). Because Cousett "alleges only a violation of Rule 3A:10, we apply the standard for determining whether non-constitutional error is harmless." Purvis, 31 Va. App. at 308.

"Non-constitutional error is harmless '[w]hen it plainly appears from the record and evidence given at trial that the parties have had a fair trial on the merits and substantial justice has been reached." Id. (alteration in original) (quoting Code § 8.01-678). In determining whether an error is harmless, we "must review the record and the evidence and evaluate the effect the error may have had on how the finder of fact resolved the contested issues." Id. (quoting Lavinder v. Commonwealth, 12 Va. App. 1003, 1007 (1991) (*en banc*)).

As noted, and emphasized above, the purpose of the rule limiting joinder of trials is to prevent the harm caused by the introduction of otherwise *inadmissible* evidence of another crime and not to bypass the requirement of presenting evidence establishing the identity of the perpetrator for each offense.

"Ordinarily, error in refusing to sever offenses is harmless if evidence related to each of the counts would have been admissible in a separate trial of any of the other counts." Id. "Conversely, such error may not be harmless if evidence related to each of the counts would have been *in*admissible in a separate trial of any of the other counts." Id. This rule recognizes that "in a jury trial, 'the introduction of admissible evidence of another crime . . . confuses one offense with the other, . . . and, by showing that the accused has a criminal propensity, tends to reverse his presumption of innocence.'" Id. at 308 (alterations in original) (internal quotation marks omitted) (quoting Godwin, 6 Va. App. at 123).

"However, 'in a bench trial, the trial judge is presumed to disregard prejudicial or inadmissible evidence, and this presumption will control in the absence of clear evidence to the contrary.'" Id. at 309 (quoting Hall v. Commonwealth, 14 Va. App. 892, 902 (1992) (*en banc*)).

In a bench trial, an erroneous refusal to sever offenses is harmless "absent clear evidence that the trial court (1) considered inadmissible evidence in convicting the accused of the charged offenses, or (2) used the 'harmless error doctrine . . . prospectively . . . as a basis to disregard an established rule of law.'" Id. at 310 (internal citation omitted) (quoting Hackney v. Commonwealth, 28 Va. App. 288, 296 (1998) (*en banc*)).

Here, it is clear that evidence of the crimes committed against I.P. and I.P.'s identification of Cousett as her assailant would have been admissible at a separate trial for the charges involving T.H. Pursuant to Virginia Rule of Evidence 2:404(b), such evidence would have been admissible to show identity, among other things. That rule provides that although "evidence of other crimes, wrongs, or acts is generally not admissible to prove the character trait of a person in order to show that the person acted in conformity therewith," the evidence may be admitted "if it tends to prove any relevant fact pertaining to the offense charged, such as where it is relevant to show motive, opportunity, . . . *identity*, absence of mistake, . . . or . . . a common scheme or plan." Va. R. Evid. 2:404(b) (emphasis added); see also Severance v. Commonwealth, 67 Va. App. 629, 647 (2017). While the method of entering the two apartments was insufficient to warrant joinder of the offenses as a common scheme, that fact combined with the evidence that within a two-hour period an African-American male entered the closed and unlocked front doors of two women, whose apartments were located approximately a quarter of a mile from each other, while carrying a white bag would have been admissible "other crimes" evidence of identity had there been separate trials.[5] Cousett does not assign error to the

---

[5] We recognize that there appears to be an anomalous inconsistency between the Supreme Court's Rule 3A:10(c) that limits the consideration of other crimes evidence for the purpose of joinder and that Court's precedent permitting the admission of other crimes evidence to establish various facts in issue that necessarily renders harmless any error in a judgment permitting joinder where the evidence would be admissible in any event in a separate trial. As discussed above, the purpose of Rule 3A:10(c) is to strike a balance between judicial economy and the potential for

- 10 -

sufficiency of the evidence, and this evidence would have been admissible in a separate trial on the issue of identity for whatever weight the factfinder might choose to give it.

Thus, in the absence of affirmative evidence to the contrary, we are bound by the presumption that the circuit court judge, acting as the finder of fact in this case, properly and separately considered only the evidence relevant to the charges in each case. The erroneous refusal to sever is therefore harmless unless there is clear evidence on the record that the trial court either considered inadmissible evidence from T.H.'s case in convicting Cousett in the case involving I.P. or vice versa. The time, location, and description and other details provided by I.P. regarding her assault and assailant were relevant and admissible to corroborate the identity of T.H.'s rapist. After reviewing the record under this standard, we conclude "that the parties have had a fair trial on the merits and substantial justice has been reached." Code § 8.01-678.

For these reasons, we hold that although the circuit court erred in refusing Cousett's motion to sever, the resulting error was harmless under the facts of this case. Therefore, we affirm Cousett's convictions.

<u>Affirmed.</u>

---

*unfair* prejudice. Though the purpose of judicial economy without a risk of unfair prejudice would undoubtedly be served by a joint trial whenever the evidence would be admissible in separate trials in any event, the plain language of the Rule does not currently allow it. Where the accused or the Commonwealth's attorney do not agree to joinder, the express language of Rule 3A:10(c) *only* permits the joinder of offenses in a single trial where (1) the offenses are based on the same act or transaction, or on two or more acts or transactions that are connected or constitute parts of a common scheme or plan, and (2) justice does not require separate trials. Rule 3A:6(b); Rule 3A:10(c). However, absent affirmative evidence rebutting the presumption of regularity that trial judges and juries follow the law regarding how "other crimes" evidence may be properly considered, there is no *unfair* prejudice if evidence would have otherwise been admissible and thus any error in joinder is rendered harmless.