COURT OF APPEALS OF VIRGINIA

Present: Judges Humphreys, Huff and AtLee
Argued by videoconference

JASON LAUFETETTE BROOKS

OPINION BY
v.      Record No. 0209-20-4      JUDGE ROBERT J. HUMPHREYS
APRIL 13, 2021

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF LOUDOUN COUNTY
Stephen E. Sincavage, Judge

Kelly L. King (Law Office of Kelly L. King, PLLC, on brief), for
appellant.

Leanna C. Minix, Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellee.

On July 12, 2017, Jason Laufetette Brooks ("Brooks") was found guilty in the Circuit

Court of Loudoun County ("the circuit court") of six counts of grand larceny, in violation of

Code § 18.2-95, six counts of grand larceny with intent to sell, in violation of Code

§ 18.2-108.01(A), three counts of unlawfully entering a vehicle, in violation of Code § 18.2-147,

and three counts of damaging personal property belonging to another, in violation of Code

§ 18.2-137. On March 23, 2017, Brooks filed a motion to sever the charges against him to

require multiple independent trials. On April 4, 2017, following a hearing, the circuit court

denied his motion to sever. On appeal, Brooks argues that the circuit court erred by denying his

motion because the offenses did not constitute a "common scheme or plan" and because justice

required separate trials.

## I. BACKGROUND

On March 13, 2017, Brooks was indicted for offenses that occurred on six separate dates between May 1 and September 10, 2016. In each instance, tires and rims were stolen from late-model sports utility vehicles ("SUVs") or trucks parked overnight in the driveways of single-family homes and the vehicles were found resting entirely on cinder blocks in the morning. Several of the affected vehicles were equipped with lug nut locks; the windows of those trucks and SUVs were broken, and the lug nut lock keys were missing from the vehicle's interior. The tire and rim sets were all fairly new, each worth between $2,000 and $5,600, and their prior use ranged from 8,000 to 20,000 miles. Aidan Shealy ("Shealy"), whose SUV was equipped with lug nut locks and whose rear passenger window was broken, also reported that a custom set of golf clubs was missing from his vehicle. In two instances, older tires or cars were located nearby the targeted truck or SUV but were left undisturbed.

On September 20, 2016, Sergeant William Bernard ("Sergeant Bernard") of the Holmdel Township Police Department in Monmouth County, New Jersey, stopped a white Ford Explorer being driven by Brooks. After obtaining a search warrant, Detective Andrew Kret ("Detective Kret") of the Holmdel Township Police Department searched the vehicle and found a GPS unit, cinder blocks, a car jack, and a socket wrench with sockets of varying sizes. Detective Kret also found an access card to a U-Haul storage unit in Maryland. Additionally, Brooks's cell phone contained a link to an online article titled "Tire Bandit Strikes Again" regarding a series of tire and rim thefts in Loudoun County.

Loudoun County police executed a search warrant at the U-Haul storage facility and found lug nuts, lug nut keys, tires, rims, and golfing paraphernalia. At trial, Shealy identified "golf gear" found in Brooks's storage unit as his, along with a receipt bearing Shealy's name and several other items that had been stolen from his SUV. Additionally, officers found business

cards that said "Deals on Wheels." Brooks's apartment in Maryland contained business cards for "Deals on Wheels" identical to those in the storage unit, as well as lug nuts and lug nut keys. Brooks admitted that the U-Haul storage unit and business cards belonged to him and stated that he started a tire and rim re-sale business approximately a year earlier.

On March 13, 2017, a grand jury indicted Brooks on twenty-two counts (later reduced to eighteen) including grand larceny, grand larceny with the intent to sell, destruction of personal property, and automobile tampering.[1] On March 23, 2017, Brooks filed a motion to sever the charges and require six separate trials for each incident. After a hearing, the circuit court denied the motion, finding both that the idiosyncratic nature of the circumstances surrounding the offenses demonstrated a common scheme and that the additional evidence regarding Brooks's tire re-sale business indicated he had a common plan in their commission.

Brooks was tried by a jury on July 10-12, 2017, and was found guilty on all eighteen charges against him. On January 9, 2018, he was sentenced to seventy-two years and sixty-three months of jail time and $6,000 in fines with sixty years and $6,000 suspended. Brooks filed a petition for a delayed appeal, which was denied by this Court on June 26, 2019. He subsequently filed a petition for a writ of habeas corpus, which was granted, ultimately resulting in this appeal.

## II. ANALYSIS

### A. Standard of Review

Rule 3A:10(c) governs when courts may direct an accused to be tried at one time for all charges currently against him. See Rule 3A:10(c). "A lower court's interpretation and application of the Rules of the Supreme Court . . . presents a question of law that we review *de novo*." Cousett v. Commonwealth, 71 Va. App. 49, 57 (2019). "The question whether an

---

[1] Although originally indicted on twenty-two charges, at the conclusion of the Commonwealth's case, Brooks moved to strike the evidence. The circuit court granted his motion on four counts, reducing the total number of charges to eighteen.

accused, pursuant to Rule 3A:10(c), can be tried in a single trial for all offenses then pending against that defendant is a matter resting within a trial court's sound discretion." Commonwealth v. Minor, 267 Va. 166, 172 (2004) (citing Cheng v. Commonwealth, 240 Va. 26, 33 (1990)). Thus, unless the circuit court abused its discretion in ordering a single trial for the multiple charges against Brooks, the circuit court's decision will be affirmed on appeal. See id.

### B. Whether the Charges Should Have Been Severed

"The court may direct that an accused be tried at one time for all offenses then pending against him, if justice does not require separate trials and (i) the offenses meet the requirements of Rule 3A:6(b) or (ii) the accused and the Commonwealth's attorney consent hereto." Rule 3A:10(c). Rule 3A:6(b) states, "Two or more offenses . . . may be charged in separate counts of an indictment or information if the offenses . . . constitute parts of a common scheme or plan." Because Brooks did not consent to be tried jointly for his offenses, "the Commonwealth was required to establish both of the other two conditions of Rule 3A:10(c), namely, that the offenses satisfied the requirements of Rule 3A:6(b), and that justice did not require separate trials." Scott v. Commonwealth, 274 Va. 636, 644 (2007). Brooks argues that the circuit court erred by finding that his offenses met the definitions for both "common scheme" and "common plan" under Rule 3A:6(b). Additionally, he argues that the Commonwealth failed to establish that justice did not require separate trials.

### 1. Common Scheme or Plan

In Scott v. Commonwealth, the Supreme Court of Virginia differentiated between "common scheme" and "common plan," finding that the terms are not synonymous. 274 Va. at 645. However, they also are not mutually exclusive; a series of crimes may exhibit both a common scheme and a common plan. See id. at 646. Accordingly, although a common scheme

- 4 -

and a common plan are distinctively different, it is possible for the same set of facts to meet both definitions.

"'[C]ommon scheme' describes crimes that share features idiosyncratic in character, which permit an inference that each individual offense was committed by the same person or persons as part of a pattern of criminal activity involving certain identified crimes." Id. at 645. The possible range of idiosyncratic features that may prove a "common scheme" is very broad. See id. at 647. However, the Commonwealth's evidence regarding idiosyncratic features must permit an inference of a pattern of criminal activity by the same person; mere general similarities common to all offenses of the same type are insufficient. See id. at 646.

In Scott, the Supreme Court of Virginia examined multiple robberies in the same large city, all occurring within a four-month period, in the commission of which the robber displayed a gun, threatened the victims or struck them, and demanded money, credit cards, and personal identification numbers. See id. The Court held that those occurrences were not sufficiently idiosyncratic for a common scheme. See id.

Conversely, in Severance v. Commonwealth, 67 Va. App. 629 (2017), three murders occurred within a mile and a half of each other in a low-crime, residential area at the same time of day. See id. at 646. Each victim was found shot by their front door but there was no evidence of robbery despite the opportunity. See id. Additionally, the weapons and ammunition used in each murder were significantly "distinctive." See id. This Court found that the evidence in Severance was sufficiently idiosyncratic to establish a common scheme. See id.

A motion to sever charges is decided on the evidence "as it appears before trial," not on the evidence that ultimately was adduced at trial. Spence v. Commonwealth, 12 Va. App. 1040, 1045 (1991). Here, the Commonwealth presented GPS evidence linking the series of thefts. Officers from the Loudoun County Sheriff's Office analyzed data from the GPS unit from Brooks's

automobile, ran that data through the Google Earth application, and verified that the GPS had in fact been located outside the victims' residences at the time the offenses took place. Although the Commonwealth ultimately failed to prove this at trial because appellant asserted—and the circuit court agreed—that the Commonwealth failed to provide any foundation for the accuracy and reliability of Google Earth's locational data, this nevertheless provided a basis for finding a "common scheme" when the motion to sever was decided. Additionally, five out of the six thefts occurred within an approximate six-mile radius. In every instance, tires and rims were stolen from relatively new, low-mileage SUVs and trucks that had been parked overnight and were subsequently found on gray cinder blocks. Tires and rims on older, higher-mileage SUVs or trucks in the same area were ignored. The targeted vehicles were all in the driveways of single-family residences situated on large lots. Further, where the affected truck or SUV was equipped with lug nut locks, one of the vehicle's windows was broken and the lug nut lock keys taken. These idiosyncratic features between the crimes are more than general similarities common to all larcenies; the unique and common details sufficiently "permit an inference that each individual offense was committed by the same person or persons as part of a pattern of" larcenies. Severance, 67 Va. App. at 645. Consequently, the circuit court did not err in finding the existence of a common scheme.

The circuit court also did not err in finding that Brooks's offenses comprised a common plan. "A common plan is established 'when the constituent offenses occur sequentially or interdependently to advance some common, extrinsic objective.'" Id. at 646 (quoting Walker v. Commonwealth, 289 Va. 410, 418 (2015)). A common plan requires the acts to be related to one another for the purpose of accomplishing a particular goal. See Scott, 274 Va. at 646. The Supreme Court of Virginia has previously stated that to find a "common plan," the goal must be more than mere profit, as profit is often intrinsic to crime. See Walker, 289 Va. at 419 (holding that profiting

from the sale of drugs is intrinsic to the sale of drugs and does not constitute an extrinsic goal sufficient to prove a common plan). Here, Brooks testified that he had been running a tire re-sale business, Deals on Wheels, for one year at the time he was arrested. His storage unit and home both contained business cards for Deals on Wheels. Sockets, lug nuts, and lug nut keys were found in Brooks's vehicle, home, and storage unit. As the circuit court noted, Brooks's extrinsic objective was

> to run his Deals on Wheels business. He needed rims and he needed tires. . . . The fact that he has manufactured a business card in order to do it satisfies the Court that the crimes are related to each other for the purpose of accomplishing a particular goal, which is to place Mr. Brooks in business.

The evidence indicated that the larcenies were separate occurrences committed in furtherance of Brooks's common goal to steal tires and rims to supply his business inventory. Because the evidence supports the circuit court's conclusion that Brooks had a specific goal and outcome in mind, we hold that it did not err in finding that the six occurrences were also part of a common plan as contemplated by Rule 3A:10(c).

## 2. If Justice So Requires

Although Brooks's assignment of error is vague, alleging only that "the trial court erred" in joining the offenses in a single trial without further specificity, he argues on-brief that, even if his offenses constituted a common scheme or a common plan, justice nevertheless required separate trials because "the testimony of each lay witness would [have been] inadmissible in unrelated trials," referencing the six vehicle owners who had their tires and rims stolen and testified in circuit court.

"The purpose of Rule 3A:10(c) is to strike a balance between judicial economy and the danger of unfair prejudice." Cousett, 71 Va. App. at 60. "Justice often requires separate trials where highly prejudicial evidence of one of the crimes is not admissible in the trial of the other."

Long v. Commonwealth, 20 Va. App. 223, 226 (1995). The Commonwealth bore the burden of showing that justice did not require separate trials. See Scott, 274 Va. at 644 (interpreting Rule 3A:10(c)).

However, the mere fact that a jury may consider evidence of a defendant's guilt for multiple offenses does not automatically constitute unfair prejudice, otherwise no joinder of offenses would ever be permissible. As this Court held in Long, in striking the balance between judicial economy and unfair prejudice, a circuit court must essentially determine the issues a defendant is contesting and conduct a relevance analysis of the evidence proffered by the Commonwealth in support of joinder of the offenses. See Long, 20 Va. App. at 226-27. If the evidence is also relevant to a contested issue in the case and otherwise admissible—assuming a proper foundation is laid—the evidence of other crimes, while certainly prejudicial, is not *unfairly* so. Furthermore, any risk of improper application of the evidence by the jury can ordinarily be prevented by a proper instruction. See Winston v. Commonwealth, 32 Va. App. 864, 872 (2000).[2]

In contrast, if the evidence proffered by the Commonwealth relates to "a fact not probative of an element of the offense being tried," and the evidence sought to be admitted is only suggestive of the defendant's criminal propensity, such evidence is unfairly prejudicial because it would "adversely affect his presumption of innocence." Long, 20 Va. App. at 227.

On-brief, Brooks cites Commonwealth v. Minor in support of his argument that testimony by other vehicle owners would have been inadmissible in separate trials. 267 Va. at 166. In Minor, the Supreme Court of Virginia had to determine whether evidence showing that the defendant raped one victim was admissible to prove lack of consent for another victim. See

---

[2] Brooks conceded at oral argument that no such cautionary jury instruction was requested.

- 8 -

id. at 173-74. However, Brooks neglects to acknowledge that in Minor, there was only one contested issue at the hearing on the motion to sever charges—whether the alleged victim consented to sexual intercourse. Id. at 174. Minor ultimately held that evidence showing a defendant raped people other than the victim in the crime charged is generally not relevant to the question whether that victim consented to sexual intercourse. Id. at 175. However, the Supreme Court of Virginia additionally noted:

> [E]vidence showing that a defendant committed similar sexual offenses against an individual other than the victim in a particular case is, on occasion, admissible to prove certain contested matters, such as a defendant's identity or the attitude of a defendant toward a victim, provided the probative value of the evidence outweighs its prejudicial effect. Indeed, if the evidence of other similar offenses had been offered as proof on a contested issue about the defendant's identity in these offenses, that evidence would likely have been admissible.

Id. at 174.

Brooks ignores the dispositive difference between Minor and the present case: in Minor, the sole issue was whether the victim consented, and the Supreme Court held that evidence of other crimes was not relevant to the issue of consent. In this case, consent is not an issue. Brooks conceded nothing with respect to the elements of the offenses. As a result, each element of each offense was in issue and strict proof was required of the Commonwealth, particularly regarding the identity of the thief in each case. Virginia Rule of Evidence 2:404 explicitly allows evidence of other crimes, wrongs, or acts if its probative value outweighs its incidental prejudice and "if it tends to prove any relevant fact pertaining to the offense charged, such as where it is relevant to show motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, accident, or if they are part of a common scheme or plan." See also Kirkpatrick v. Commonwealth, 211 Va. 269, 272 (1970) ("[E]vidence of other offenses should be excluded if offered merely for the purpose of showing that the accused likely committed the

- 9 -

crime charged in the indictment. However, the exceptions to the general rule are equally as well established."). In <u>Severance</u>, we affirmed the circuit court's finding that justice did not require separate trials because, if tried separately, evidence from one murder would have been admissible to prove the perpetrator's identity in both of the other homicide cases. 67 Va. App. at 647.

The Supreme Court of Virginia has previously held that:

> Evidence of other offenses is admitted . . . if it tends to prove any relevant element of the offense charged. Such evidence is permissible in cases where the motive, intent, or knowledge of the accused is involved, or where the evidence is connected with or leads up to the offense for which of the accused is on trial. Also, testimony of other crimes is admissible where the other crimes constitute a part of the general scheme of which the crime charged is a part.

<u>Kirkpatrick</u>, 211 Va. at 272.

The testimony of other vehicle owners regarding the details of what was taken from their vehicles and how, could have been admissible in separate trials to show, *inter alia*, motive, identity, knowledge, and criminal intent. The danger of unfair prejudice can also be mitigated by an instruction to the jury that limits their consideration of other crimes evidence to its proper purposes and application to each offense charged.

Here, justice did not require separate trials because the evidence the Commonwealth proffered had multiple "stark similarities" that, assuming a proper foundation was laid, would have been admissible in the other trials under Rule 2:404. <u>See</u> Va. R. Evid. 2:404. Accordingly, since there would have been no additional prejudice to Brooks if the same evidence was admitted in a single trial, justice did not require separate trials.

## III.  CONCLUSION

Therefore, finding no reversible error, for the reasons stated above, we affirm the judgment of the circuit court.

<u>Affirmed.</u>