COURT OF APPEALS OF VIRGINIA

Present: Judges AtLee, Ortiz and Lorish
Argued at Richmond, Virginia

ANDREW LUKE NEFF

                                                     MEMORANDUM OPINION* BY
v.       Record No. 1307-22-2                   JUDGE DANIEL E. ORTIZ
                                                     FEBRUARY 6, 2024

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF DINWIDDIE COUNTY
Paul W. Cella, Judge

Todd M. Ritter (Hill & Rainey, on brief), for appellant.

Rosemary V. Bourne, Senior Assistant Attorney General (Jason S.
Miyares, Attorney General, on brief), for appellee.

Following a bench trial, the Circuit Court of Dinwiddie County convicted Andrew Luke

Neff of sexual battery, in violation of Code § 18.2-67.4, and strangulation, in violation of Code

§ 18.2-51.6. On appeal, he challenges the sufficiency of the evidence underlying his convictions.

Because the judgment of the trial court is not plainly wrong or without evidence to support it, we

affirm.

## BACKGROUND

"In accordance with familiar principles of appellate review, the facts will be stated in the

light most favorable to the Commonwealth, the prevailing party [below]." *Poole v. Commonwealth*,

73 Va. App. 357, 360 (2021) (quoting *Gerald v. Commonwealth*, 295 Va. 469, 472 (2018)). This

standard requires us to "discard the evidence of the accused in conflict with that of the

Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and

---

* This opinion is not designated for publication. *See* Code § 17.1-413(A).

all fair inferences to be drawn [from that evidence]." *Bagley v. Commonwealth*, 73 Va. App. 1, 26 (2021) (alteration in original) (quoting *Cooper v. Commonwealth*, 54 Va. App. 558, 562 (2009)).

A.H.[1] and Andrew Neff met at Southside Virginia Emergency, where Neff was volunteering, and A.H. worked full time. After knowing each other for a few years, they decided to go on a date on January 16, 2021, planning to "just hang out" at A.H.'s house. Prior to the date, A.H. told Neff that she did not want any "funny business," by which she meant she "didn't want to have any kind of . . . sexual encounter with him." Neff "seemed to have understood."

While they were "hanging out" in A.H.'s kitchen, Neff played music, danced around, and acted "playful." When Neff then tried to kiss A.H., she pulled back and reminded him, "no funny stuff," however Neff stated, "it was just kissing" so A.H. relented because she "did agree to that." The two moved to the couch to watch a movie, where they periodically kissed. A.H. removed her bra and asked Neff to give her a backrub, which he did. While they were kissing each other on the couch, Neff started rubbing A.H. between her legs; she believed he was trying to unbutton her pants. When she told him no, he responded by "put[ting] his hand around [her] throat and push[ing] down more than he squeezed," while stating that "nobody fucking tells me no." He choked her for 15 to 20 seconds with enough force that it was hard for A.H. to swallow and "a little bit difficult [for her] to breathe." She testified that she did not have any "physical injuries or visible injuries" but had pain "[f]rom where he had his hand on [her] chest" that lasted three to four days. She further clarified that his forearm was on her chest while he choked her, which caused her to suffer lingering pain "between [her] sternum and [her] clavicle right where [her] neck meets." After the choking, she did not say no again. Neff tried to kiss A.H. again but she turned her head, so he began kissing her neck instead, until he eventually got up.

---

[1] We use the victim's initials to protect her privacy.

A.H., who had originally told Neff that he would need to leave around 7:00 or 8:00 p.m., hinted that it was getting late and "it might be time for [him] to go." She did not directly ask him to leave. Neff stated that he wanted to "stay for a little bit longer." Neff tried to kiss her again, but A.H. did not reciprocate and tried to make excuses to leave. She told him that she needed to take her kitten to her friend's house, but she abandoned that excuse once he stated that he would go with her. After A.H. told Neff that it was time for him to leave several more times, he insisted on staying "just a few more minutes longer." He then picked A.H. up and carried her to her bedroom. Although she did not want to go to the bedroom with him, she did not protest because she "was scared."

Neff placed A.H. on her bed and sat on top of her legs, at which point he told her that he was "craving physical touch," and continued trying to kiss her despite her resistance. He removed her shirt and asked if she would let him "go down on" her, which she declined. He then put a pillow over her face, held her hands above her head, and rubbed her breasts. He did so without her consent, though she did not express her discomfort. She testified that she was "very scared" as she "didn't know what he was trying to do." She eventually freed herself, picked up her shirt, and requested that he leave. He went to the front door, hugged her, and asked if they would see each other again later that week. She said "yes, sure." He kissed her and told her he would text her when he got home.

Once Neff left, A.H. blocked him on all social media accounts. About 45 minutes later, he texted her that he was home, to which she responded that she "didn't agree with what he did and [she] was afraid of confrontation to tell him in person, but [she] wasn't into whatever it was that he was doing and to not contact [her] again." She then blocked his number. Neff later left an apology letter in her mailbox. In the letter, Neff explained that he "got overwhelmed with the need for physical touch" and "got extremely carried away." He apologized for not leaving when

she asked him to and wrote that he "was trying to be sexual and kinky" when he told her "don't tell me no." He further explained that he was trying to be erotic by "blindfold[ing]" her with a pillow. He maintained that he did not intend to scare her or make her uncomfortable.

A.H. did not report the incident to the police until September 2021 because she was "afraid." She eventually reported it because she saw Neff in her work parking lot and thought he was trying to intimidate her. Dinwiddie County Sheriff's Investigator Kenneth Droddy interviewed Neff, who acknowledged that he choked A.H. and that it probably made her uncomfortable but explained that he did so "to create an erotic moment" and did not intend to hurt her. A.H. told Investigator Droddy that Neff choking her "restrict[ed] her airway" and caused her pain "[i]n her neck."

Neff testified that A.H. told him while they worked together that she was into "rougher sex" such as "a little bit of choking and things like that." According to Neff, he "very lightly chok[ed] her, not in a way to cut off her air flow or hurt her or anything" and he "was trying to be funny, kinky, [and] sexual." He testified that they mutually agreed to go to the bedroom and as he carried her, A.H. directed him to where the bedroom was. He also stated that they both took off her shirt while they kissed. At no point during the night did he think A.H. felt scared or uncomfortable. The trial court convicted Neff of strangulation and sexual battery and sentenced him to five years in prison with four years and nine months suspended for strangulation, and to six months in jail, all suspended, for sexual battery. Neff appeals.

ANALYSIS

Neff challenges the sufficiency of the evidence supporting his convictions. "On review of the sufficiency of the evidence, 'the judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *Ingram v. Commonwealth*, 74 Va. App. 59, 76 (2021) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460

(2018)). "The question on appeal, is whether 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* (quoting *Yoder v. Commonwealth*, 298 Va. 180, 182 (2019)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018) (quoting *Banks v. Commonwealth*, 67 Va. App. 273, 288 (2017)). We address Neff's offenses in the order they occurred.

## I. Strangulation

Neff argues that the evidence was insufficient to support his conviction for strangulation because the Commonwealth failed to prove that (1) A.H. suffered a bodily injury; (2) Neff acted with the requisite criminal intent; and (3) Neff acted without A.H.'s consent. "[A]n issue of statutory interpretation is a pure question of law which we review de novo." *Heart v. Commonwealth*, 75 Va. App. 453, 460 (2022) (quoting *Green v. Commonwealth*, 75 Va. App. 69, 76 (2022)). "Any person who, without consent, impedes the blood circulation or respiration of another person by knowingly, intentionally, and unlawfully applying pressure to the neck of such person resulting in the wounding or bodily injury of such person is guilty of strangulation." Code § 18.2-51.6(A).

A reasonable fact finder could conclude that A.H. suffered a bodily injury when Neff choked her. "Bodily injury" means "any bodily injury whatsoever and includes an act of damage or harm or hurt that relates to the body; is an impairment of a function of a bodily member, organ, or mental faculty; or is an act of impairment of a physical condition." *Ricks v. Commonwealth*, 290 Va. 470, 479 (2015). A.H. did not have to experience "any observable wounds, cuts, . . . breaking of the skin," "[or] broken bones or bruises." *Id.* (quoting *English v.*

*Commonwealth*, 58 Va. App. 711, 719 (2011)).  Moreover, "[t]he Commonwealth need not present medical testimony to prove bodily injury resulting from strangulation."  *Id.* at 480.

A.H. testified that she had pain in her sternum or between her sternum and clavicle for several days caused by Neff pressing down on her chest with his forearm while choking her. Pain that lingers for several days satisfies the Supreme Court's broad definition of bodily injury as articulated in *Ricks*, even though A.H. had no observable injuries.  *See also McGowan v. Commonwealth*, 72 Va. App. 513, 522 (2020) (noting that "residual effects" of strangulation may constitute bodily injury); *Wandemberg v. Commonwealth*, 70 Va. App. 124, 136 (2019) (finding that the victim suffered bodily injury where she "testified that her neck hurt and was red after the strangulation").  Although Neff emphasizes that A.H. did not testify about any injuries to her neck, we discern no such requirement in the statute.  The nature in which Neff applied pressure to A.H.'s neck—pressing down on her neck and chest with forearm and hand—caused her bodily injury, if not specifically to her neck then at least near her neck.  Such conduct satisfies the statute.[2]

Next, a reasonable fact finder could conclude that Neff acted with the requisite criminal intent.  Neff argues that the Commonwealth was required to prove that he intended to hurt, kill,

---

[2] Neff attempts to refute A.H.'s bodily injury by analogizing his case to *Chilton v. Commonwealth*, No. 1531-13-3, 2014 WL 6428394 (Va. Ct. App. Nov. 18, 2014), where we reversed a strangulation conviction.  There, this Court stated that because the complaining witness failed to establish any observable external injuries, "the Commonwealth failed to establish that the application of pressure to the neck of the victim resulted in a bodily injury." *Id.*, slip op. at 7, 2014 WL 6428394, at *4.  In an appeal from that decision, the Supreme Court of Virginia did not adopt that rationale but ultimately agreed that the evidence was insufficient to prove that the complaining witness suffered a bodily injury.  *Ricks*, 290 Va. at 480.  Because the complaining witness never clearly testified that Chilton actually applied pressure to her neck nor did she completely lose consciousness, the Court found that the "Commonwealth's evidence was so minimal that it failed to establish that [the complaining witness] suffered a bodily injury in the form of a loss of consciousness."  *Id.* at 481.  Here, A.H. did testify as to the restriction of her airways and her resulting injuries.  Therefore, the pain she experienced falls under the Court's definition of bodily injury relating to Code § 18.2-51.6.

scare, or injure A.H. His only legal authority for this proposition is the doctrine that criminal statutes be strictly construed against the Commonwealth. But that doctrine does not empower us to read elements into a statute where none exist. *See Lahey v. Johnson*, 283 Va. 225, 230 (2012) (explaining that appellate courts may not, "under the guise of statutory construction," read into a statute's words that the legislature did not use). Again, Code § 18.2-51.6 provides that "[a]ny person who, without consent, impedes the blood circulation or respiration of another person by knowingly, intentionally, and unlawfully applying pressure to the neck of such person resulting in the wounding or bodily injury of such person is guilty of strangulation." Contrary to Neff's argument, the words "hurt," "kill," and "scare" are absent from the statute. Even if "intentionally" modifies "resulting in the wounding or bodily injury," "[a] trier of fact may infer that a person intends the natural consequences of his or her acts." *Webber v. Commonwealth*, 26 Va. App. 549, 565 (1998) (quoting *Hernandez v. Commonwealth*, 12 Va. App. 669, 672 (1991)). Here, Neff intentionally applied pressure to A.H.'s neck and chest for 15 to 20 seconds. It is reasonable to infer from this evidence that Neff intended to cause her injury. In so concluding, the fact finder could disregard Neff's self-serving testimony that he intended to create an erotic moment, particularly when coupled with Neff's statement that "nobody fucking tells me no." *See Brown v. Commonwealth*, 75 Va. App. 388, 414 (2022) (explaining that a fact finder can conclude that a defendant's self-serving testimony was a lie to conceal his guilt).

Finally, a reasonable fact finder could conclude that Neff acted without A.H.'s consent. Neff does not argue that A.H. agreed to being strangled. Rather, he argues that he did not act knowingly against A.H.'s will as she consensually kissed him and "did not expressly say no" to being strangled. However, "a defendant's intent to commit the crime . . . is not the same issue as whether a victim consented to sexual intercourse. Those two issues are distinct and should not

be blurred." *Commonwealth v. Minor*, 267 Va. 166, 173 (2004)[3]; *see also People v. Mangiaracina*, 424 N.E.2d 860, 863 (Ill. App. Ct. 1981) ("[W]hether the defendant intended to commit the offenses without the victim's consent is not relevant; the critical question being whether the victim did, in fact, consent. This involves her mental state, not the defendant's."). Based on the plain language of Code § 18.2-56.1, Neff did not need to know that A.H. did not consent to the strangulation. "Knowingly" and "intentionally" do not modify "without consent" under any plain reading of the statute, and we decline Neff's offer to find the evidence insufficient merely because A.H. did not expressly say "don't strangle me" before being strangled. "[T]he issue of consent concerns [the] victim's state of mind." *Minor*, 267 Va. at 176. A.H. testified that she did not give Neff permission to strangle her, that she was scared, and that nothing after Neff said, "nobody fucking tells me no," was consensual. Accordingly, the evidence is sufficient to support Neff's strangulation conviction.

## II. Sexual Battery

Neff also challenges the sufficiency of the evidence underlying his sexual battery conviction, arguing that the Commonwealth failed to prove that (1) he sexually abused A.H. by force, threat, intimidation, or ruse, and (2) he acted with the requisite criminal intent. A person commits misdemeanor sexual battery if he "sexually abuses . . . the complaining witness against the will of the complaining witness, by force, threat, intimidation, or ruse." Code § 18.2-67.4(A). "Sexual abuse" includes "intentionally touch[ing] the complaining witness's intimate parts" "with the intent to sexually molest, arouse, or gratify any person." Code § 18.2-67.10(6)(a). "The Commonwealth need not demonstrate that the complaining witness cried out or physically resisted the accused . . . but the absence of such resistance may be

---

[3] *Commonwealth v. Minor* discusses the crime of rape; however, the elements are similar in regard to intent and consent and therefore can be analogized in this case. *See* 267 Va. at 173-74.

considered when relevant to show that the act alleged was not against the will of the complaining witness." Code § 18.2-67.6.

Here, the evidence was sufficient to establish that Neff accomplished his act of touching A.H.'s breasts through force. When reviewing convictions of sexual battery done "by force," we consider the totality of the circumstances. *Jones v. Commonwealth*, 219 Va. 983, 986 (1979); *Bondi v. Commonwealth*, 70 Va. App. 79, 88-89 (2019); *Wactor v. Commonwealth*, 38 Va. App. 375, 382-83 (2002). This Court has stated that "some force other than merely that force required to accomplish the unlawful touching" is required. *Johnson v. Commonwealth*, 5 Va. App. 529, 534 (1988).[4] "[U]nless some force is used to overcome the will of the complaining witness, the unlawful touching constitutes common law assault and battery." *Id.* Considering the totality of the circumstances, we can conclude that Neff used force to "overcome [A.H.'s] will." *Sabol v. Commonwealth*, 37 Va. App. 9, 16 (2001). When they reached the bedroom, he sat on top of her, took her shirt off, held her hands above her head, and put a pillow over her face—all before the actual sexual abuse—rubbing her breasts. His actions prior to the sexual abuse were sufficient to constitute the use of force to overcome A.H.'s will.

The evidence is also sufficient to show Neff used intimidation to achieve the sexual touching. "Intimidation requires 'putting a victim in fear of bodily harm by exercising such domination and control of her as to overcome her mind and overbear her will.'" *Id.* at 18. (quoting *Sutton v. Commonwealth*, 228 Va. 654, 663 (1985)). In this case, Neff's and A.H.'s

---

[4] *Johnson* was overruled by *Robinson v. Commonwealth*, 70 Va. App. 509 (2019) (en banc), because the Court "failed to apply the appropriate appellate standard of review giving due deference to the fact finder, and incorrectly found on appeal a lack of force despite the very facts showing force cited in the Court's opinion." *Id.* at 517. Therefore, it overturned the application of law to the facts, not the above stated principles.

post-strangulation actions must be read with the strangulation in mind.[5] A.H. testified that she did not protest against Neff carrying her to the bedroom because she "was scared." A reasonable fact finder could conclude that she was scared because, when she previously rejected one of Neff's sexual advances, he responded by choking her for 15 to 20 seconds and demanding that she not tell him "no." Moreover, when Neff rubbed A.H.'s breasts, he placed a pillow over her face, further heightening her fear that he may cause her harm if she did not acquiesce to his desires. Finally, he refused to leave despite her repeated—and by his own admission, understood—requests for him to leave her house. Based on these facts, a reasonable fact finder could easily conclude that Neff intimidated A.H. and that such intimidation undermined her willingness to reject his advances.

Finally, a reasonable fact finder could conclude that Neff acted with the requisite criminal intent. Again, Neff relies primarily on his self-serving assertions that he believed A.H. would enjoy his actions. And again, the trial court could reject Neff's explanation and conclude from Neff's actions that he intended to overpower A.H.'s will to refuse him. Neff also relies on the intent element necessary for the lesser-included crime of assault and battery. He argues that he did not intend any harmful, offensive, or non-consensual touching. However, this is not the intent necessary under Code § 18.2-67.10(6)(a) or Code § 18.2-67.4. "The state of mind of an alleged offender may be shown by his acts and conduct." *David v. Commonwealth*, 2 Va. App.

---

[5] Neff relies on the case of *Woodard v. Commonwealth*, 27 Va. App. 405 (1998). In that case, this Court reversed the defendant's assault and battery conviction because his conduct was accomplished by surprise rather than by intimidation. *Id.* at 407. "Nothing in the record proves that [defendant] overcame [the complaining witness's] mind and overbore her will by employing psychological pressure, threats or fear of bodily harm. He simply grabbed her abruptly. She had time neither to reflect upon his conduct, nor to submit." *Id.* at 410. This case can be distinguished from that of *Woodard*. None of what occurred on that January night occurred abruptly nor did Neff take A.H. by surprise. Instead, A.H. had time to reflect on Neff's conduct and her options under the circumstances and was forced to submit to Neff's non-consensual touching because she was "scared" after he choked her.

1, 3 (1986).  There is no question that Neff's conduct shows that he committed the offense "with the intent to sexually molest, arouse, or gratify" either A.H. or himself.  By his own admission, he sought to create an "erotic moment" and craved physical touch.  Accordingly, sufficient evidence supports Neff's conviction for sexual battery.

CONCLUSION

For the foregoing reasons, we affirm the judgment of the trial court.

*Affirmed*.